## Otis L. Williams et al. v. Shamrock Oil & Gas Company et al.

No. 6673.  Decided July 15, 1936.
Rehearing overruled October 21, 1936.
(95 S. W., 2d Series, 1292.)

*Madden, Adkins, Pipkin & Keffer,* of Amarillo, for plaintiffs in error.

The provision in the contract "that time is the essence of this agreement" was placed in the contract for the benefit of plaintiffs in error and had reference only to the commencement and drilling of the well and was not susceptible to the construction that the assignment placed in escrow must have been sufficient at the moment it was placed there to convey good and merchantable title to the mineral interests in question, and defendants in error were not justified in their repudiation of the contract in anticipation of the future inability of plaintiffs in error to deliver merchantable title. Loud v. Pomona Land & Water Co., 153 U. S., 564, 38 L. Ed., 822, 14 Sup. Ct., 928; Hall v. Shirk, 35 S. W. (2d) 191; 27 R. C. L., p. 650.

*Underwood, Johnson, Dooley & Huff,* of Amarillo, for defendants in error.

The provision in the contract providing "that time is the essence of this agreement" was for the benefit of both parties where the contract was for the sale of an undivided interest

in an oil and gas mining lease providing that the vendor would place in escrow with the contract an assignment conveying by good and merchantable title the undivided interest which was to be paid for by the vendee by spudding in and completion of an oil and gas well to "big gas" within a limited period, and such provision in the contract as to time applied to the vendors to place good and merchantable title in escrow by an assign-ment as well as to obligate the vendee to begin and complete the well in a limited time. Investors Utility Corporation v. Challa-combe, 39 S. W. (2d) 175; Hausler v. Harding-Gill Co., 15 S. W. (2d) 548; 2 Williston on Contracts, p. 1621, sec. 846.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

Plaintiffs in error Otis L. Williams and Kelley Petroleum Company, Inc., will be called plaintiffs, and defendant in error Shamrock Oil & Gas Company will be called defendant. Plaintiffs sued defendant and the Amarillo National Bank to recover $4,000.00 placed in escrow with the bank by the defendant to assure performance of a contract entered into by plaintiffs, as parties of the first part, and defendant, as party of the second part. The contract was executed on May 5, 1930, and by its terms the defendant agreed to purchase from plaintiffs an undivided one-half interest in and to an oil and gas mining lease covering certain lands situated in Hutchinson County. The consideration paid and contracted to be paid for the assignment was $10.00 in cash and the drilling and completion of a well. Provisions with reference to the drilling of the well were:

"3. Party of the second part shall, within sixty days from the date hereof, commence upon said land the actual spudding in of a well to be drilled for the procuring of oil and/or gas and once commenced said well is to be thereafter drilled with reasonable care and speed to sea level or to oil in paying quantities, and to be completed prior to the 4th day of November, 1930. It is expressly understood and agreed in this connection that the primary term of the lease on this tract terminates on November 4, 1930, *and that time is the essence of this agreement*, and that said well must at least be drilled into 'the big gas' before said date, and thereafter completed as herein provided.

"4. Party of the second part is to furnish all labor and materials at its own cost and expense for the drilling of said well, and hereby binds itself that upon completion of said well

all material, equipment and other property shall be fully paid for, and party of the second part shall not have suffered any person, firm or corporation to in any manner incumber any of such property or to file mechanic's or materialmen's lien on account of any unpaid labor or material bills arising out of or in connection with the drilling of said well."

Paragraph 5 contains provisions as to the manner of the completion and equipment of the well and paragraph 6 reads as follows:

"6. Parties of the first part agree to execute an assignment to party of the second part conveying to it *by good and merchantable title,* a copy of which assignment is hereto attached. It is agreed by the parties hereto that a copy of this contract with the assignment is to be placed in escrow in the Amarillo National Bank, at Amarillo, Texas, and held by said bank under the terms of this agreement, the assignment to be delivered by the bank to the party of the second part upon the completion of the well as herein provided. With said copy of said contract and the assignment, party of the second part is to place in escrow in said bank the sum of $4,000.00 which shall guarantee the performance of this agreement upon its part, and if party of the second part fails to spud in the well herein contemplated, within the time provided, this agreement shall become of no further binding force or effect upon them, except that the said bank shall pay to the parties of the first part the said sum of $4,000.00 as liquidated damages, actual damages being uncertain. It is further agreed and understood that in the event party of the second part otherwise defaults in the performance of this agreement or fails to complete the well in the time and manner hereinabove provided, the said assignment is to be returned by said bank to parties of the first part, and said bank shall also pay over to parties of the first part the said sum of $4,000.00, and all hole, casing, derricks and oil well equipment, except drilling tools thereon situated at the time of the default shall then and there become the property of the parties of the first part as liquidated damages for the purchase of this agreement, the actual damages being uncertain." (Italics ours).

Following this was an express provision that the defendant should not acquire any interest in the leasehold estate until the completion of the well. The case was tried upon an agreed statement of facts in which it was stipulated that, contemporaneously with the execution and delivery of the contract, plaintiffs executed an assignment to an undivided one-half in-

terest in the lease and at the same time the defendant deposited $4,000.00 in the bank in accordance with the terms of the contract. Shortly thereafter plaintiffs delivered to the attorneys for the defendant an original abstract covering the tract of land involved, dated June 15, 1926, and a supplement thereto dated August 7, 1926, and thereafter on or about May 8, three days after the execution of the contract, the plaintiffs delivered to said attorneys a further supplement dated May 6, 1930. Defendant's attorneys examined the abstract with its supplements and on May 14, 1930, rendered an opinion in writing to the defendant and delivered a copy thereof to the plaintiffs. By their opinion they advised the defendant that good and merchantable title to an undivided one-half interest in and to the leasehold estate was not sufficiently vested in the plaintiffs and that the assignment was not sufficient to convey to the defendant good and merchantable title to the undivided one-half inerest. On the next day, May 15, defendant sent to plaintiffs by registered mail a letter which, omitting formal parts, reads as follows:

"Our attorneys, on May 13th, furnished you with copy of their opinion covering the above described lands.

"We have gone over this opinion, and you are advised that we decline to accept the assignment of an undivided one-half interest in the oil and gas lease in question tendered, for the reason that the same does not convey good and merchantable title to an undivided one-half interest in the leasehold estate, in accordance with the contract, and we consider the contract mentioned terminated.

"You are therefore requested to notify the Amarillo National Bank, at Amarillo, Texas, to return to us the good faith deposit of $4,000.00 deposited with said Bank in connection with this transaction."

This letter was received by plaintiffs on May 16th, and on that day they, acting through Williams, addressed to the defendant a letter in reply thereto, the material portion of which reads as follows:

"We say to you that we are able and willing to meet each and every requirement contained in Mr. Johnson's opinion, and are anxious to do so. * * * We are ready to perform, and shall expect performance on your part.

"If your letter of May 15th expressed your final determination in the matter and if it will be useless for us to proceed, will you kindly so advise us, in order that we may govern ourselves accordingly."

This letter was received by the defendant on the following day, and was replied to on May 23rd. This language is taken from the reply:

"In view of the short term of the lease in question, we would not care to enter into any new negotiations for acquiring this lease, which would involve time for title corrections."

On May 31, thereafter, defendant addressed letters to the plaintiffs and the bank. In the letter to plaintiffs they were requested immediately to advise the bank that defendant was entitled to withdraw the escrow fund, and in the letter to the bank a request was made that the fund be withdrawn from escrow and deposited to defendant's account. The bank refused to deliver the fund to either party without the other's consent, and at the trial tendered same into court and offered to pay it out to the party entitled thereto under the judgment to be rendered by the court.

The trial court, without the assistance of a jury, rendered judgment in favor of plaintiffs against defendant for the escrow fund of $4,000.00 less $100.00 allowed the bank as attorney's fees. Plaintiffs were further awarded judgment against the defendant for $100 on account of the deduction of the attorney's fee from the escrow fund. The Court of Civil Appeals affirmed the trial court's judgment only in so far as it awarded the bank a recovery of $100.00 as attorney's fees. As between the plaintiffs and the defendant the judgment was reversed and judgment rendered that the plaintiffs take nothing. It was further adjudged that the defendant recover of the bank the sum of $3,900.00, being the amount of the escrow deposit less attorney's fees allowed the bank. 63 S. W. (2d) 570. That portion of the judgment awarding the bank $100.00 as attorney's fees is not complained of by any party to the litigation, and will therefore receive no further notice.

■ The question for decision is not whether defendant should have performed its own covenants by expending all of the money necessary to complete the well and await until it was completed to determine whether plaintiff would be able to convey to it a "good and merchantable title." The defendant did not repudiate the contract, and does not here undertake to justify its repudiation, on the ground of anticipation of future inability of plaintiff's to deliver a satisfactory title. It claims, not that the contract terminated after it was executed because of any breach of covenant by the plaintiffs, or because it became apparent that plaintiffs would not be able to convey a half

interest in the leasehold estate to it by good and merchantable title upon the completion of the well, but that the plaintiffs did not have that character of title at the instant the contract was executed and delivered, and that, therefore, no liability at all was incurred by it in the execution of the contract.

By way of further limiting the exact question for decision, we observe that plaintiffs owed no duty, as a condition precedent to their right to maintain this action, to proceed to meet the objections pointed out to their title. Defendant positively and unconditionally repudiated the contract within ten days after it was executed in the face of assurances from plaintiffs that they were able, willing and anxious to meet each and every requirement contained in the opinion of defendant's attorneys. The effect of this unconditional renunciation of the contract by the defendant was to entitle the plaintiffs to treat it as terminated and demand the escrow deposit without first curing the defects. Kilgore v. Northwest Texas Baptist Educational Association, 90 Texas, 142, 37 S. W., 598; Moore v. Jenkins, 109 Texas, 461, 211 S. W., 975; Burks v. Neutzler (Com. App.), 2 S. W. (2d) 416; Pollack v. Pollack (Com. App.), 46 S. W. (2d) 262. In this connection we observe that there was apparently no incurable defect in plaintiffs' title.

■ In justification of its repudiation defendant must rely solely upon the theory that time was of the essence of the contract, and that, since the plaintiffs failed to perform within the time fixed by the contract, it had the right to elect to treat this failure as a discharge of the entire contract. We cannot adopt this theory. It is often true that a stipulation in an executory contract that time is of its essence is for the benefit of both the vendor and the vendee, but whether or not it will be so construed must be determined from a consideration of the contract as a whole. The real intent of the parties is, of course, the controlling factor. The stipulation appears in this contract in such setting as to evidence that it was intended to have reference alone to the covenants of the defendant. This, we think, is manifest from the language of the paragraph in which the stipulation occurs, and which we here repeat as follows:

"3. Party of the second part shall, within sixty days from the date hereof, commence upon said land the actual spudding in of a well to be drilled for the procuring of oil and/or gas and once commenced said well is to be thereafter drilled with reasonable care and speed to sea level or to oil in paying quantities, and to be completed prior to the 4th day of November,

1930. It is expressly understood and agreed in this connection that the primary term of the lease on this contract terminates on November 4, 1930, *and that time is the essence of this agreement,* and that said well must at least be drilled into 'the big gas' before said date, and thereafter completed as herein provided." (Italics ours).

■ This express recital that "time is the essence of this agreement," taken in its setting and in connection with the facts and circumstances, clearly evidences that time was of the essence of the covenants made by the defendant, but we find nothing in the contract, or in the facts and circumstances surrounding its execution, which evidences an intention to make time of the essence of any agreement on the part of plaintiffs.

It is well to keep in mind the meaning of the expression, "time is of the essence of the contract." Page on Contracts, Vol. 4, Sec. 2103, defines it as follows:

"When it is said that time is of the essence of a contract, it means that the provision in the contract which fixes the time of performance is to be regarded as a vital term of the contract, the breach of which may operate, at the election of the party not in default, as a discharge of the entire contract. * * *."

Williston on Contracts, Vol. 2, Sec. 846, gives this definition:

"When it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party. It does not mean that delay will not give rise to a right of action against him. A breach of any promise in a contract, whether of vital importance or not will do that; nor does the phrase mean merely that time is a material matter, but that it is so material that exact compliance with the terms of the contract in this respect is essential to the right to require counter performance. * * *."

■ There is no provision in this contract which fixes the time of performance by the plaintiffs. They did not promise to perform any act at any given time after the effective date of the contract. The only act which they promised to perform was to execute an assignment to defendant, and it is stipulated in the agreed statement of facts that they performed that act simultaneously with the execution and delivery of the contract. No obligation arose until the contract was executed and de-

livered, and it contains no promise on the part of the plaintiffs thereafter to perform any act upon which the principle that time is of the essence of a contract could operate. It cannot be applied to the condition of the title of plaintiffs at the very instant the contract was executed and so operate as to make the fact of the existence of a good and merchantable title at that time a condition precedent to the creation of any liability against defendant. We find no language in the contract indicating an intention of the parties to create a condition precedent.

■ Ordinarily in making executory contracts of this nature provisions are made therein for the time in which an abstract is to be furnished, the time allowed for examination thereof and making report of objections thereto, and the time within which the vendor may meet the requirements, but this contract is wholly silent in these respects. That the parties intended that an abstract should be examined by the defendant is disclosed both by the language of the contract and the construction which they placed thereon by their acts. The expression "by good and merchantable title" indicates that defendant was to determine the condition of the title. Evidently the parties placed that interpretation upon it, for within three days after the contract was executed the plaintiffs had caused a supplemental abstract to be prepared, showing the condition of the title down to May 6, 1930, and had delivered the abstract and supplement to defendant's attorneys. Six days later the attorneys made their written report upon the title and sent a copy thereof to plaintiffs. The defendant having undertaken to examine the title for the purpose of determining whether it was good and merchantable, owed the duty, which it recognized, to report to the plaintiffs the particulars wherein it was claimed to be defective. This it did within ten days after the contract was executed and fifty days before it was obligated to commence the spudding in of a well. Had the defendant demanded that plaintiffs cure the defects pointed out to the title, it would probably not be questioned that plaintiffs owed the duty to do so within a reasonable time. It is equally clear to our minds that plaintiffs should have been afforded a reasonable time within which to cure these defects.

The case of Easton v. Montgomery, 27 Pac., 280, 25 Am. St. Rep., 123, frequently cited by courts of various jurisdictions and by text writers, well expresses the rule applicable to this case in this language:

"It is evident from the provision inserted in the memo-

randum, 'title to prove good, or no sale, and this deposit to be returned,' that it was contemplated by the parties that an examination of the title was to be made on behalf of the plaintiff, and that upon such examination it might be found defective. As no time was specified within which such examination should be made, a reasonable time therefor was implied: Allen v. Atkinson, 21 Mich., 351. * * * Having assumed to examine the title for the purpose of determining whether it was good, it was incumbent upon him to make a complete examination thereof. He could call upon the defendants for any information with reference thereto, and it then became their duty to furnish such information as they possessed: Benson v. Shotwell, 87 Cal., 49. If, upon such examination, it appeared to him that the title was defective, it then became his duty to report to the vendor the particulars wherein such defects were claimed to exist, and in the absence of any time fixed by the agreement within which the vendor should remove these defects, or satisfy his objections, a reasonable time would be allowed therefor: More v. Smedburgh, 8 Paige, 600."

We are firmly convinced that defendant's action in repudiating the contract was unjustified, and accordingly the judgment of the Court of Civil Appeals will be reversed and that of the trial court affirmed.

Opinion adopted by the Supreme Court July 15, 1936.

Rehearing overruled October 21, 1936.