**Price R. ASHTON, Appellant,**

v.

**Tom BENNETT, Jr., et al., Appellees.**

**No. 5246.**

Court of Civil Appeals of Texas, Waco.

Dec. 6, 1973.

Rehearing Denied Jan. 10, 1974.

David L. Tisinger, J. P. Darrouzet, Austin, for appellant.

Dawson, Dawson & Smith, Corsicana, for appellees.

HALL, Justice.

Bennett agreed to sell and Ashton agreed to buy certain oil and gas leases lo-

cated in Navarro County for $94,000. In keeping with the terms of their written agreement, Ashton deposited $15,000 earnest money with J. C. Jacobs, Bennett's attorney. The agreement was not consummated and Ashton brought this suit to recover the $15,000. After a trial without a jury, judgment was rendered that Bennett recover the money and that Ashton take nothing. Ashton appeals. We affirm.

Findings of fact and conclusions of law were not requested and none were filed. Therefore, the judgment implies every finding of fact that is necessary to support it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613 (1951). And, the judgment should not be disturbed on appeal if it can be affirmed on any legal theory that finds support in the record. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 84 (1939).

The contract is dated January 11, 1971. The parts that are pertinent to our discussion provide:

"3. Seller agrees to deliver a title policy for NINETY-FOUR THOUSAND DOLLARS ($94,000.00), if one can be obtained in Navarro County, to be furnished by Tom Bennett, Jr., and to insure title to the said oil and gas leases into the said Price R. Ashton. The cost of such Title Policy shall be borne by the said Tom Bennett, Jr.

"  .  .  .

"6. Purchaser has this day deposited with Mays, Jacobs & Pevehouse the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) as earnest money with the following understanding:

If the Purchaser shall fail or refuse to carry out the terms of this agreement for any reason other than defects in title, such escrow funds will be forfeited as liquidated damages and paid over to Seller. If, however, Seller cannot furnish a Title Policy or if the title is found to be defective, then such escrow deposit shall be returned to the

Purchaser and all parties shall be relieved of their obligations hereunder.

"7. All parties agree to expedite this contract to a final conclusion, and it is agreed that this sale shall be closed within thirty (30) days unless a delay is necessitated in order to obtain the Title Policy."

Ashton pleaded that he "cancelled the contract and terminated the same" about February 1, 1971. The evidence shows without contradiction that he did so. The record as a whole, including testimony we shall not recite, supports implied findings that Ashton, for reasons he did not choose to directly reveal to Bennett or the trial court, unconditionally renounced his agreement with Bennett at least 10 days before either was obliged to perform; and that this repudiation was without just cause and was not made in good faith. A reasonable inference from the evidence would be that soon after making the contract Ashton concluded that it was not or might not be as profitable as he originally believed, and he became disenchanted with the deal, wanted out, and terminated it.

Ashton pleaded that Bennett failed to meet his obligations under the contract in several particulars, including failure to tender a marketable title to the leases and failure to tender a title policy; and that his cancellation of the contract was therefore justified. He now asserts that the evidence conclusively establishes those allegations. We have carefully reviewed the record. Although there is proof to support some of those allegations, it is composed either of Ashton's testimony or of disputed evidence and does no more than raise fact questions. The evidence contains much minute matter, and to detail it in full here would serve no useful purpose.

Mr. Jacobs testified that after the contract was executed, he immediately began examining abstracts in order to prepare a title policy. Bennett's interest in each lease was a determinable fee, based upon production in paying quantities or payment

of shut-in royalty. A policy was secured near the end of January, 1971, which insured the record title to the leases, and a copy was furnished to Ashton for his approval. About February 1st, Ashton told Jacobs the record title was not enough to protect him and he could not accept the policy on that basis. Jacobs then made arrangements for an unconditional title policy and tendered it to Ashton. On February 5th, Ashton refused to accept the unconditional policy and told Jacobs, "I am' not going through with the deal." Jacobs said, "I do remember for sure that the only objection [Ashton] ever voiced was to his protection under the title policy . . . As a matter of fact, he never mentioned to me any particular leases that were faulty."

Ashton has been buying and selling oil and gas leases for forty years. He is an attorney. He was assisted in this transaction by a friend and advisor, Teddy L. Henderson, who also is an attorney. Mr. Henderson testified that he "went over the record title and found nothing wrong with the record title." There is other testimony that the leases were in full force and effect and that the title was marketable at all pertinent times.

■ However, if Ashton's assertions that Bennett failed to fulfill his responsibilities under the contract were true, the unqualified and unjustified anticipatory breach by Ashton destroyed the contractual relation between the parties; Moore v. Jenkins, 109 Tex. 461, 211 S.W. 975, 976 (1919); and relieved Bennett of the performance of any obligations imposed upon him by the agreement. American Fidelity And Casualty Co. v. Williams, (Tex.Civ.App., 1931, writ ref.) 34 S.W.2d 396, 403; Williams v. Shamrock Oil & Gas Co., 128 Tex. 146, 95 S.W.2d 1292, 1295 (1936).

■ Ashton contends that the contractual provision for treating the earnest money deposit as liquidated damages is, as

a matter of law, a penalty and forfeiture clause and therefore invalid.

Bennett testified that in October, 1971, he sold the leases to "a new company, a weak little company" located in New Mexico, in exchange for $50,000 cash and a note for $110,000. He stated that it is doubtful that he will ever collect on the note, and said, "The way I look at the thing, probably the $50,000 is all I'll get out of it. It's a ten-year debenture, and ten years from now there's not going to be anything left out there. So the $50,000, in my estimation is what I got for it."

In Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952) the court said:

"The right of competent parties to make their own bargains is not unlimited. The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages. A party has no right to have a court enforce a stipulation which violates the principle underlying that rule. In those cases in which courts enforce stipulations of the parties as a measure of damages for the breach of covenants, the principle of just compensation is not abandoned and another principle substituted therefor. What courts really do in those cases is to permit the parties to estimate in advance the amount of damages, provided they adhere to the principle of just compensation. Restatement of Contracts, Sec. 339, accurately expresses the rule as follows:

"(1) An agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for

the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

Under our record, the clause in question meets the test in *Basey* for an enforceable stipulation in advance for damages in the event of a breach of the contract by Ashton.

Ashton's other complaints have been duly considered. All are without merit. They are overruled.

The judgment is affirmed.