**COMMONWEALTH PETROLEUM COMPANY, INC.,** doing business as Petrowealth, Inc., and Kay C. Johnson, Plaintiffs–Appellees,

v.

**L. Charles BILLINGS,**
Defendant–Appellant,

and

**David F. Fisher, Defendant–Appellee,**

and

**David Myrick, Jr. and Janet Jacobsen Myrick,**
Intervenors–Defendants–Appellees.

No. 84CA1277.

Colorado Court of Appeals,
Div. I.

Dec. 31, 1987.

Rehearing Denied Feb. 4, 1988.

Certiorari Denied Aug. 22, 1988.

Cogswell & Wehrle, Eugene S. Burk, Jane E. Archer, Denver, for plaintiffs-appellees.

H.R. McCollister, P.C., H.R. McCollister, Denver, for defendant-appellant.

David F. Fisher, pro se.

No appearance for intervenors-defendants-appellees David Myrick, Jr. and Janet Jacobsen Myrick.

CRISWELL, Judge.

Defendant L. Charles Billings appeals the trial court's decree that he was not entitled to rescind his agreement with defendant David F. Fisher that called for an assignment of an oil and gas lease. He asserts that the court erred in concluding that Fisher did not commit a material breach of the agreement. We disagree and affirm.

In February 1982, Fisher entered into an agreement (Agreement) with Billings to assign to Billings an oil and gas lease that was to be issued to Fisher by the Bureau of Land Management (BLM) at a later date. Under the Agreement, Billings deposited $75,000 in escrow with Metro National Bank, N.A. (Metro) to be held by it pending issuance of the lease by BLM. Initially, the deposited funds were to be used to purchase a six-month certificate of deposit; thereafter, the funds were to be placed in an interest-bearing account at Metro. Upon Fisher's delivery to Metro of the BLM lease and an assignment thereof, Metro was to deliver the funds to Fisher and the lease and assignment to Billings.

The Agreement provided that the assignment of the lease would be made "within 5 days of the issue of said lease" and that full payment would be made "within seven (7) days of the delivery of the lease." It also provided that, if the lease had not been issued within one year from the date of the Agreement, Billings could elect either to cancel the Agreement and obtain a refund of the escrow funds, or to continue the Agreement in effect. In the latter event, Billings was granted a similar option to cancel every six months thereafter, until the lease was issued.

On August 16, 1982, BLM issued to Fisher a single lease, describing all of the property that was subject to the lease. No question has been raised as to the form of this lease, or as to its sufficiency to vest Fisher with good title to the leasehold interest involved. The evidence does not establish when this lease was delivered to Fisher. However, on September 1, 1982, or some 15 calendar days after its issuance, Fisher delivered the lease and an assignment executed by him to Metro.

In the interim, however, BLM had issued a "segregation order," which had the effect of dividing the leased premises into two leased parcels. There was evidence that, because of this order, the form of the assignment that Billings had provided to Metro was not sufficient to assign the entire leasehold interest in both these parcels to Billings. However, there is no evidence as

to when either Fisher or Billings learned of the inadequacy of the original assignment form; nor is there any evidence that Billings ever requested Fisher to execute or deliver any other form of assignment.

For reasons unrelated to the issues between Fisher and Billings, Metro failed to deliver to Billings the documents deposited by Fisher or to distribute to Fisher the funds being held by it. In addition, shortly after Fisher's delivery of the lease and assignment to Metro, plaintiffs instituted this litigation, seeking to have both Fisher and Billings recognize that they possessed rights under a claimed separate agreement with Fisher. These claimed rights were in no manner inconsistent with Billings' rights granted by the Agreement.

In its initial pleadings, Billings raised no objection about Fisher's untimely deposit of the lease and assignment with Metro or about the form of the assignment. Indeed, it was not until more than a year after Fisher deposited the documents that Billings finally filed a pleading asserting that Fisher's untimely deposit and the inadequate form of the assignment constituted material breaches of the Agreement. The trial court concluded, however, that the time for Fisher's deposit of the documents was not of the essence under the Agreement and that Fisher had committed no material breach that would allow Billings to refuse to perform his obligations thereunder.

## I

■ Billings' first assertion is that, since the subject matter of the Agreement is an oil and gas lease, the time set for the performance of the various obligations under the Agreement must be considered to be "of the essence" as a matter of law, even though there is no express provision in the Agreement to that effect. We disagree.

■ The question whether the time for the performance of one party's obligation goes to the essence of an agreement is important as implicating the other party's duty to render his return performance. If time is of the essence, and one party does not perform in a timely fashion, the other party has a right to refuse to perform his obligations and to rescind the agreement. *See Williams v. Shamrock Oil & Gas Co.,* 128 Tex. 146, 95 S.W.2d 1292 (1936). Thus, if time was of the essence as to Fisher's obligation to deposit the lease and assignment with Metro, the fact that he was some ten days late in doing so would give to Billings grounds for rescinding the Agreement, if he chose to do so.

■ In determining whether the time for the performance of a particular obligation is of such vital importance that it may be said to be of the essence of an agreement, a number of factors must be considered; however, ultimately, the question is whether all of the circumstances demonstrate that performance by the date set by the agreement is important. *Restatement (Second) of Contracts* § 242 (1981). Thus, even though an agreement provides that timely performance is of the essence, such a provision is not conclusive upon the point; it must still be shown that time was, in fact, of the essence. *Houy v. Davis Oil Co.,* 175 Colo. 180, 486 P.2d 18 (1971); *Jones v. McKinney,* 107 Colo. 215, 110 P.2d 258 (1941).

■ Moreover, consideration of extrinsic circumstances may result in the conclusion that time is of the essence for the performance by one party, but is not essential for the other party's performance. *See Williams v. Shamrock Oil & Gas Co., supra* (time is of essence provision applied to obligation to drill because of date of expiration of primary term of lease, but did not apply to date by which good title had to be shown).

If the subject matter of an agreement is of uncertain, speculative, or fluctuating value, time may be considered to be of the essence. *See Restatement, supra,* § 241 comment e. Some text writers suggest, therefore, that in agreements relating to oil and gas interests, or assignments thereof, time should always be considered to be of the essence, whether or not the instrument contains such a provision. *See* 3 W. Summers, *The Law of Oil & Gas* § 544 (1958);

2 E. Kuntz, *Thornton on Oil & Gas* § 19.10 (1964).

Adjudicated cases do not support such a blanket rule, however. Rather, the decisions have looked to the particular circumstances surrounding the transaction to determine whether time was important. *See Campbell v. Barber*, 272 S.W.2d 750 (Tex. Civ.App.1954) (well being drilled on neighboring property at time of contract later developed salt water, rendering subject interest valueless); *Kirk v. First National Bank*, 132 Kan. 404, 295 P. 703 (1931) (purchaser buying for resale; by time of seller's performance, neighboring well proved to be dry hole, making resale of interest practicably impossible).

Moreover, we can discern no justification for subjecting agreements involving oil and gas interests to some exceptional rule, not applied to other agreements. *See Houy v. Davis Oil Co., supra* (record failed to demonstrate that time of performance of drilling contract was of essential importance).

Thus, we conclude that the fact that the Agreement called for the assignment of an oil and gas lease does not mandate the conclusion that the time for the performance of every obligation under the Agreement was of its essence. Rather, we conclude that it was incumbent upon Billings to demonstrate that Fisher's time for depositing the lease and assignment went to its essence. *See Houy v. Davis Oil Co., supra; Restatement, supra,* § 242.

■ However, Billings did not present any evidence, beyond the provisions of the Agreement itself, to establish this fact.

Further, the terms of the Agreement do not contemplate that the time set for Fisher's deposit is a matter going to its essence. On the contrary, not only is there no provision to this effect to be found within its terms, but the Agreement reflects the parties' understanding that BLM would probably not issue its lease for six months and that its issuance could be delayed for more than one year. Thus, even if we were to assume that the value of the prospective BLM lease fluctuated widely during this period (a matter about which there is no evidence), the express provisions of the Agreement indicate that the parties intended for the assignment of the lease to be consummated in spite of any such fluctuations. *See Harrell v. Clarke*, 174 Okla. 623, 51 P.2d 720 (1935).

It is true that, after the assignment was effectuated, Billings was to perform certain obligations, including drilling under described conditions by specified dates, and that the Agreement called for the payment of liquidated damages for his failure to perform on time. However, even if we were to assume that, by these provisions, the parties intended to make the timely performance by Billings a matter going to the essence of the Agreement, such intention would not necessarily apply to the date set for Fisher's deposit of the title documents. *See Williams v. Shamrock Oil & Gas Co., supra.*

We conclude, then, that Billings failed to prove that the time set for Fisher to deposit the lease and assignment was a matter going to the essence of the Agreement. Thus, the trial court committed no error in concluding that Fisher's deposit of the documents some ten days after the date specified did not constitute a material breach of the Agreement.

## II

■ Billings also contends that Fisher's failure to deposit two assignments, in a form sufficient to transfer his interest in both parcels resulting from the segregation order, was also a material breach of the agreement, allowing him to rescind. We disagree with this contention, as well.

■ Billings sued only for rescission of the Agreement; he did not seek damages. However, he could exercise his right to rescind, if it existed, only if he did so in a timely manner. *Joyce v. Davis*, 539 F.2d 1262 (10th Cir.1976) (applying Colorado law).

Moreover, in considering Billings' right to rescind, we must focus not on what Fisher *did*, but on what he *could* and *would* have done, had Billings registered some objection to the form of the assignment which Fisher gave. *See Bridgkort*

**740**

Racquet Club v. University Bank, 85 Wis. 2d 706, 271 N.W.2d 165 (1978). Thus, rescission cannot be granted if, at the time of the hearing, the defect in the title instrument can be corrected. *See Godding v. Decker,* 3 Colo.App. 198, 32 P. 832 (1893); *Joyce v. Davis, supra.*

Here, it is undisputed that Fisher had good title to a proper leasehold interest in all of the lands subject to the segregation order; he needed only to correct the form of the assignment to transfer that interest. Yet, there is no evidence that Billings ever made his objection to the form of the assignment known to Fisher until he filed his third responsive pleading in this action. Further, he did not seek an order from the court requiring Fisher to execute a corrective assignment; he sought only to use the incorrect assignment form to support his request for rescission of the Agreement. At the same time, the record is undisputed that Fisher was always ready, willing, and able to furnish such further corrective documents as might be required.

Under these circumstances, one could reasonably conclude that even Billings, himself, did not consider the form of the assignment executed by Fisher to be a material breach. Indeed, under similar circumstances other courts have concluded that the objection raised was a mere "afterthought" used improperly to "bootstrap" a technical defect into a meritless claim for rescission. *See Joyce v. Davis, supra.* In any event, we conclude from our review of the materials placed before the trial court that it was correct in deciding that any deficiencies in the form of the assignment were insufficient as a foundation upon which to ground a claim for rescission.

Judgment affirmed.

PIERCE and METZGER, JJ., concur.