Mary Ann **BELLATTI**, Appellant,

v.

**HOLLAND MORTGAGE AND INVEST-MENT CORPORATION**, Appellee.

No. 6–91–048–CV.

Court of Appeals of Texas, Texarkana.

July 7, 1992.

Rehearing Denied Sept. 22, 1992.

Roger S. McCabe, Mehaffy & Weber, P.C., Beaumont, for appellant.

James T. Holland, Holland Mort. & Inv. Corp., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Mary Ann Bellatti appeals from a judgment non obstante veredicto taken against her in favor of Holland Mortgage & Investment Corporation. Bellatti contends that the trial court erred in entering a judgment non obstante veredicto, in denying her motion for judgment on the verdict, in denying her request to correct the inadequacy of damages found by the jury, and in denying her motion for mistrial due to improper and incurable jury argument by Holland Mortgage. We find no error and affirm.

Bellatti sued Holland Mortgage, alleging that her effort to refinance her condominium was delayed by the ineptitude of Holland Mortgage employees to such a degree that, by the time she realized that Holland Mortgage was not going to refinance her loan, she could no longer obtain refinancing elsewhere. These actions all occurred during a three-month period. Her initial financing for the condominium was at 13.93 percent interest per annum. When she contacted Holland Mortgage about refinancing her loan, funding was alleged to be available at a rate of 9.50 percent. A Holland Mortgage employee told her that it would be willing and able to make the loan and asked her to obtain a title policy in preparation for closing. Three months later, Holland Mortgage informed Bellatti that the Federal Housing Administration required condominium loan applicants to show a 70 percent or higher owner occupancy rate in order for it to guarantee a loan. This requirement could not be met.

She then attempted to obtain conventional or Federal Housing Administration financing from other sources and failed. Bellatti alleges that she was injured by Holland Mortgage's negligence, which kept her from obtaining alternative financing while such financing was available, thus leaving her with unnecessarily high loan payments for the life of the loan. The jury answered some of the special issues in her favor. The trial court entered a judgment non obstante veredicto, disregarding the jury's findings of negligence, proximate cause and damages.

■■■ A court can grant a motion for judgment non obstante veredicto only if it could have granted an instructed verdict. *French v. Bank of Southwest Nat'l Ass'n,* 422 S.W.2d 1, 9 (Tex.Civ.App.–Houston [1st Dist.] 1967, writ ref'd n.r.e.); TEX.R.CIV.P. 301. Such a motion should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law. In order to uphold a judgment non obstante veredicto, we must determine that no evidence supports the jury's findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). In reviewing a no evidence point, we are limited to reviewing only the evidence that tends to support the jury's verdict, and we must disregard all evidence to the contrary. If more than a scintilla of evidence supports the jury's findings, those findings must be upheld. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d at 228; *Garcia v. Insurance Co. of Pennsylvania,* 751 S.W.2d 857, 858 (Tex.1988).

The jury found that Holland Mortgage had made negligent misrepresentations to

Bellatti and that these negligent misrepresentations had damaged her in the amount of $17,263.00.[1] The jury did not find that Holland Mortgage engaged in false, misleading or deceptive acts or practices.

■ A central question is whether any evidence supports the jury's verdict. The loan was not approved because Bellatti could not meet the 70 percent occupancy requirement. The 70 percent owner occupancy rate had been an absolute requirement in order to obtain Federal Housing Administration financing or refinancing before March 1986. One witness testified that any competent loan officer should have told the applicant of this requirement at the time of making the application. Another witness testified that the 70 percent requirement had been in effect since 1979. There was also testimony from Patty McGee, a loan processor at Holland Mortgage during relevant times, that the Federal Housing Administration requirements for refinancing were identical to an original purchase. This appears to constitute some evidence that Holland Mortgage's representative was negligent in failing to inform Bellatti of the absolute requirements in a timely fashion.

However, there is no evidence that Bellatti could have obtained a loan from some other source. The only evidence offered on this topic consists of an advertising letter and testimony that some conventional loans did not require the 70 percent owner occupancy required before the loan could be purchased by federal agencies. The letter advertises the availability of Federal Housing Administration loans at the rate of 12.50 percent. The letter is no evidence of conventional loan availability. The testimony indicates that the overwhelming majority of the loan money available could only be obtained through compliance with the Federal Housing Administration's 70 per-

cent occupancy standard. There is no evidence that Bellatti could have obtained financing from any other source at that time.

In the absence of any proof that she could have obtained financing from some other source, she has failed to show that she was damaged by Holland Mortgage's negligence. The trial court correctly granted a judgment non obstante veredicto.

Because of our resolution of this issue, the questions about the adequacy of damages are moot. We need not address moot questions.

The judgment of the trial court is affirmed.

1. The jury was instructed that it was to provide damages based upon factors including the difference in the amount of money that she paid under the terms of her 1982 mortgage from June 1986 until trial and the amount that she would have paid in principal and interest under the conventional loan that she would have qualified for in March 1986, the present value of the difference between the amount that she will pay during the remaining life of the 1982 mortgage compared to the amount that she would have paid under a conventional loan that she would have qualified for in March 1986, the amount of the down payment that would have been paid to refinance, plus interest from June 1986 until trial, and the amount paid as an application fee.