# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00485-CV

**MHI Partnership, Ltd., Appellant**

**v.**

**DH Real Estate Investment Company d/b/a DH Investment Company, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. GN200866, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant MHI Partnership, Ltd., appeals from the trial court's judgment against it in its breach-of-contract action against appellee DH Real Estate Investment Company d/b/a DH Investment Company. We affirm the trial court's judgment.

### Factual and Procedural Background

DH, a real estate development company, purchased land to develop into residential lots for later sale to builders to create the "Covered Bridge" subdivision. Two builders, MHI and Wilshire homes, entered into contracts with DH to purchase these lots. Under the initial contract, the lots were to be developed and sold to the builders in three phases, at a fixed price. In June 1999, this pricing method was modified to a "cost pass-through" method to allow for additional construction costs. The allowed pass-through had a percentage cap based on the original fixed price for the lots. DH was required to show proof of the need for cost escalation by giving written notice

of any escalation together with backup information verifying the cost increases for each phase at least three weeks prior to the date of closing the purchase. The 22-page contract (excluding exhibits), in paragraph L of "Miscellaneous Provisions" stated: "Time of the Essence. Time is of the essence of this Contract."

In January 2001, the parties made various contract amendments. The change with significance to this dispute was the modification of the provision allowing for higher costs to be passed through so that it became a "two-way street": if the actual costs were less than the budgeted costs for the phase, then the purchase price of each lot would be *reduced*. The same documentation and notification requirements continued to apply.

On February 28, 2002, DH provided MHI with written notice of substantial completion of Phase 1 and demanded that closing on the lot sales occur within 10 days, on or before March 11, 2002. DH also notified MHI that the additional cost amount for Phase 1 was 2% more than the base purchase price, an increase within the cap. DH provided written notice of the actual construction and engineering costs but it did not provide backup information for all the costs at least three weeks before the proposed closing date.

On March 5, 2002, MHI responded to DH's request to set the closing date on March 11 by requesting that the closing be extended so that MHI would have an opportunity to review the backup cost information. DH responded on the same day, requesting that the closing proceed on the proposed date and also proposing, as an alternative, to delay closing for three weeks. On the same day, DH sent an email to MHI proposing the following modification:

As to the Actual Costs versus Budgeted Costs, if you are concerned about what happens if there is a price reduction, this is to confirm that, assuming we close as we have proposed, we will execute an agreement that in the event the cost review results in a reduction in prices we will reimburse MHI that amount plus interest from the date of closing. Conversely, we would expect MHI to do likewise.

MHI did not respond to the proposed modification. MHI received the construction and engineering cost backup information for Phase 1 two days later on March 7, 2002.

The next day, March 8, MHI terminated the contract based on DH's failure to provide the backup information for all construction and engineering costs three weeks before the proposed closing date, as required in the contract. On March 11, DH responded to MHI's termination letter by offering to extend the closing date and waive any interest charges. MHI responded on March 13, confirming the termination and requesting reimbursement of its earnest money. DH refused to reimburse the earnest money and MHI sued.[1]

### *The Trial and Verdict*

The case was tried to a jury in April 2004. After hearing testimony from both sides, the trial court denied MHI's motion for directed verdict. It also overruled MHI's objections to Jury Question No. 1, "Was Defendant's [DH's] conduct in this case a material breach of contract between the parties?" The question then provided instructions for determining materiality. The jury answered no to the question. The trial court entered judgment in favor of DH. This appeal followed.

---

[1] Additional facts relevant to the discussion of individual issues will be detailed under those issues.

3

In this appeal, MHI presents six issues. Five of its issues hinge on its assertion that it established a material breach as a matter of law. MHI contends that the trial court erred in: (1) denying MHI's motion for directed verdict because the evidence established a material breach of contract as a matter of law; (2) overruling MHI's objections to the submission of Question No. 1 to the jury because the evidence established a material breach of contract as a matter of law; (3) overruling MHI's objections to the inclusion of Instruction 1 in Jury Question No. 1 because the evidence established a material breach of contract as a matter of law;[2] (4) overruling MHI's objection to the inclusion of Instruction 5 in Jury Question No. 1 because the evidence established a material breach of contract as a matter of law;[3] and (5) denying MHI's motion to disregard jury finding and motion for entry of final judgment because the evidence established a material breach of contract as a matter of law. In its sixth issue, MHI contends that the trial court erred in denying MHI's motion for new trial because the jury's answer to Question No. 1 is against the great weight and preponderance of the evidence, or alternatively, is not supported by factually sufficient evidence.

---

[2] Instruction 1 in Jury Question No. 1 stated: "In determining if a material breach occurred, you may consider: (1) the extent to which Plaintiff could have been adequately compensated for the part of that benefit of which it was deprived." This instruction was based on the Restatement (Second) of Contracts section 241(b).

[3] Instruction 5 in Jury Question No. 1 stated: "In determining if a material breach occurred, you may consider: [. . .] (5) the extent to which the behavior of Defendant, in failing to perform or to offer to perform, comported with standards of good faith and fair dealing." This instruction was based on the Restatement (Second) of Contracts section 241(e).

4

**Discussion**

The essence of MHI's complaint is that DH materially breached the contract by violating the "time is of the essence" provision of the contract because it did not provide the required backup information at least three weeks before the proposed closing date as specified in the contract. MHI asserts that it was entitled to a directed verdict because it established this material breach as a matter of law. There are two aspects to analyzing this complaint. One aspect is MHI's burden of proof to be entitled to the directed verdict for which it moved. Another aspect is whether this "boilerplate" time is of the essence clause tucked into a section of miscellaneous contract provisions meant that a failure to comply with any deadline was a material breach justifying contract termination or whether this clause was simply a term that time was important to some aspects of the contract, requiring a search for the parties' intent with regard to this particular contract.

*Directed Verdict Review*

An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Solares v. Solares*, 232 S.W.3d 873, 878 (Tex. App.—Dallas 2007, no pet.). A legal sufficiency evidentiary challenge on an issue on which an appellant bears the burden of proof requires that the appellant demonstrate the evidence conclusively established all vital facts to support the issue. *Id.* Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

As applied to this case, appellant MHI was the plaintiff below and had the burden of proof to demonstrate that the evidence conclusively established that DH's failure to produce the

5

necessary documents at the time required was a material breach of the contract that justified MHI's complete termination of the contract. In other words, MHI had to show that reasonable people could not differ over the meaning of the time is of the essence clause. Given that, in most circumstances, the intent of the parties controls whether time is truly of the essence in a particular contract, that is a heavy burden. *See Langley v. Norris*, 167 S.W.2d 603, 612 (Tex. Civ. App.—Eastland 1942), *aff'd on other grounds*, 173 S.W.2d 454 (Tex. 1934). We now examine the law of material breach and time is of the essence clauses to determine whether DH's violation of the three-week time period was a material breach that justified termination of the contract by MHI.

### *Breach of Contract*

Default or breach of contract by one party may excuse performance by the other party. *See, e.g.*, *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004); *Compass Bank v. MFP Fin. Servs.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied). A party's release from further obligation under the contract depends on whether the other party's breach of the contract was material. *Mustang Pipeline*, 134 S.W.3d at 198. The Restatement lists five circumstances that are significant in determining whether a failure to perform is material:

> (a) The extent to which the injured party will be deprived of the benefit that party reasonably expected;
>
> (b) The extent to which the injured party can be adequately compensated for the part of that benefit of which that party will be deprived;
>
> (c) The extent to which the party failing to perform or to offer to perform will suffer forfeiture;

6

(d) The likelihood that the party failing to perform or to offer to perform will cure this failure, taking account of the circumstances, including any reasonable assurances; and

(e) The extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* at 199 (citing Restatement (Second) of Contracts § 241 (1981)). In addition to the above factors, two other significant circumstances for determining whether a party's contractual duties are discharged because of the other party's material breach are:

1. The extent to which it reasonably appears to the injured party that delay may prevent or hinder the injured party in making reasonable substitute arrangements; and

2. The extent to which the agreement provides for performance without delay, but a material failure to perform or to offer to perform on a stated day does not, of itself, discharge the other party's remaining duties, unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.

*Id.* (citing Restatement (Second) of Contracts § 242 (1981)); *see also Querencia Props., S. de R.L. de C.V. v. New Querencia Capital Partners, L.L.C.*, 224 S.W.3d 348, 351 (Tex. App.—Dallas 2006, no pet.) (material failure to perform or offer to perform on stated day does not itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important) (citing *Mustang Pipeline*, 134 S.W.2d at 199).

*Time is of the Essence*

Ordinarily, time is not of the essence in contract performance. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Municipal Admin. Servs., Inc. v. City of Beaumont*, 969 S.W.2d 31, 36 (Tex. App.—Texarkana 1998, no pet.). However, the intention of the parties may make it so. *Langley*, 167 S.W.2d at 612. That the contract states a date for performance does not necessarily mean time is of the essence. *Pham*, 210 S.W.2d at 19. The contract must expressly make time of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence. *Id.*; *Siderius, Inc. v. Wallace Co.*, 583 S.W.2d 852, 863 (Tex. Civ. App.—Tyler 1979, no writ). If the written contract is not clear that the parties intended time to be of the essence, surrounding circumstances may be taken into consideration in determining the question. *McKnight v. Renfro*, 371 S.W.2d 740, 745 (Tex. Civ. App.—1963, writ ref'd n.r.e.). As noted in *Langley*, "Under the modern rule, whether time is of the essence of the contract is dependent on its provisions, purpose, and the surrounding circumstances, showing the intention in the parties that the contract must be performed at or within a given time." 167 S.W.2d at 612. Further, "[a]lthough a contract which in express terms declares that time is of the essence, it is not necessarily so unless the parties intended it to be." *Id.* (citing *Williams v. Shamrock Oil Co.*, 95 S.W.2d 1292, 1295 (Tex. 1936)). The comments to the Restatement note that "[s]uch stock phrases as 'time is of the essence' do not necessarily have this effect, although under Subsection (c)[4]

<hr />

[4] The reference to Subsection (c) is a reference to Subsection (c) of section 242 of the Restatement that lists the circumstances that are significant in determining whether a breach by one party has discharged the other party's duty to perform. Subsection (c) articulates this circumstance:

they are to be considered along with other circumstances in determining the effect of delay." Restatement (Second) of Contracts § 242 cmt. d, illus. 9 (1981).

Appellant heavily relies on *Mustang Pipeline*, apparently as support for the proposition that any express time is of the essence provision in a contract makes any missed deadline a material breach as a matter of law. *See* 134 S.W.3d at 198-99. However, in *Mustang Pipeline*, the supreme court considered evidence introduced at trial, in addition to the contract's express time is of the essence provision, to determine whether the missed deadline was a material breach. *Id.* Citing the criteria for material breach in the Restatement (Second) of Contracts, sections 241 and 242, the court found that the evidence introduced at trial was sufficient to establish material breach as a matter of law. *Id.* at 199. It is significant that the court did not simply point to the time provision in the contract as support for its conclusions that time was an essential element of the contract. The supreme court's opinion noted, but did not discuss, the language of the clause, another indication that the express language did not determine the issue. Rather, the court examined all of the facts and circumstances surrounding the contract in determining that time was of the essence.

[T]he extent to which the agreement provides for performance without delay, but a material failure to perform or to offer to perform on a stated day does not of itself discharge the other party's remaining duties unless the circumstances, including the language of the agreement, indicate that performance or an offer to perform by that day is important.

9

*Application to this Case*

In this case, we conclude that the "boilerplate" nature of the clause and the totality of the circumstances surrounding the contract meant that the parties did not intend the time is of the essence clause to apply to this particular deadline. The contract had numerous deadlines, many of them involving the exchange of information, rather than the actual closing of the sale of the improved lots, the purpose of the contract. *See Williams*, 95 S.W.2d at 1295 (time not necessarily of the essence with respect to all provisions and all parties). In contrast to the specific language used in *Mustang Pipeline*, in which the clause said that "*all* time limits stated in the Contract are of the essence to the Contract," 134 S.W.2d at 195 (emphasis added), the clause in this case simply said that time was of the essence to the contract. Finally, the clause in the current case was a stock, "boilerplate," clause of the kind that the Restatement comment notes does not necessarily have the effect of making time of the essence, but is just one consideration in determining whether it is.

MHI's director of land acquisition, Terry Guerin, testified that the parties did not intend for the time is of the essence clause to be applied to each and every deadline in the contract:

> Q:  So not every date in this contract is necessarily one which if violated would justify termination of this agreement. Would you agree with that?  We've seen two examples now.
>
> A:  I agree with that.

Dennis Werner, MHI's division president for Austin and San Antonio, was involved in lot selection and home building for MHI. He testified that it would not have made a difference either

to the home-building operation or to MHI in general if the closing had been delayed two or three or four weeks.

In reviewing the Restatement factors[5] to consider whether the breach was material, we note that most weigh against the breach being considered material. MHI was not deprived of the benefit of the overall purpose of the contract; it still would have received the improved lots. MHI's reaction to DH's request to close on March 11, even though all back-up material had not been received, was to ask to delay the closing. DH then responded with an offer to reimburse MHI for any later-discovered cost reductions, plus interest. It also offered to delay closing for three weeks. MHI's only response was to terminate the contract. So, although MHI would not have had the information to challenge costs in its possession as of a closing date of March 11, DH had already offered to "cure" by a contract modification or by extending the closing for the three-week period specified in the contract for furnishing the information. Accordingly, MHI would not have been deprived of the information it needed had it gone ahead with the offered option to extend the closing date. It is difficult to see that MHI was even partially deprived of any benefit of the contract. On the other hand, DH suffered a forfeiture in the sense that it lost a sale of lots because of the contract's termination and would have to find another buyer.

Appellant had to conclusively establish that a material breach occurred to be entitled to a directed verdict. In other words, MHI had to prove that reasonable people could not differ in their conclusions concerning the meaning of the time is of the essence clause. *See City of Keller*, 168 S.W.3d at 816. Given the evidence in the case, the use of a stock, overall clause, and the factors

---

[5] Restatement (Second) of Contracts § 241 (1981), discussed on page 8, *supra*.

in analyzing whether a breach is material, appellant did not establish, to the degree that reasonable minds cannot differ, that DH's failure to timely tender the documentation was a material breach. Accordingly, we overrule the first issue.

***Other Jury Issues***

In his second issue, appellant complains that the trial court erred in submitting Question No. 1 to the jury asking whether a material breach occurred. In issue one, above, we have held that MHI did not establish material breach as a matter of law. Because reasonable minds could differ about the controlling facts concerning whether a material breach occurred, the issue was properly submitted to the jury. *See Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978); *Byrd v. Delasandra*, 195 S.W.3d 834, 837 (Tex. App.—Dallas 2006, no pet.). We overrule issue two.

In its fifth issue, MHI complains that the trial court erred in denying MHI's motion to disregard a jury finding. A motion to disregard a jury finding is a challenge to the legal sufficiency of the evidence and is reviewed under the same standard as a motion for judgment notwithstanding the verdict, *see* 6 Elaine Carlson, *McDonald's Texas Civil Practice*, § 8:14, at 219 (2d ed. 1998), which in turn is reviewed using the same standard as a directed verdict, *see Bellatti v. Holland Mortgage & Inv. Corp.*, 838 S.W.2d 261, 262 (Tex. App.—Texarkana 1992, no writ). In this case, by holding that MHI was not entitled to a directed verdict, we have already impliedly held that legally sufficient evidence supported the verdict based on the jury finding that DH did not commit a material breach. For the same reasons that we overruled MHI's first issue, we overrule its fifth issue.

In its third and fourth issues, MHI contends that the trial court erred in submitting certain instructions to the jury because MHI established material breach as a matter of law.[6] We have held that MHI did not establish material breach as a matter of law. Accordingly, it was not error to submit these instructions. Further, the trial court's instructions tracked the Pattern Jury Charge which reflects the language in section 241 of the Restatement (Second) of Contracts. Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance, Employment*, PJC 101.2 (2006) (citing *Mustang Pipeline*, 134 S.W.3d at 199). As noted in *Ford Motor Co. v. Ledesma*: "Our trial courts routinely rely on the Pattern Jury Charges in submitting cases to juries, and we rarely disapprove of these charges . . . ." 242 S.W.3d 32, 45 (Tex. 2007). The trial court used an established instruction under Texas law to assist a jury in determining whether a material breach of contract occurred. The instructions assisted the jury, accurately stated the law, and had support in the pleadings and the evidence and thus were proper. *See Texas Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000). Accordingly, we overrule MHI's third and fourth issues.

***Motion for New Trial***

In issue six, MHI contends that the trial court erred in failing to grant its motion for new trial. Following entry of judgment in favor of DH, MHI moved for a new trial, asserting that the jury's failure to find material breach of contract by DH was against the great weight and preponderance of the evidence. A motion for new trial is addressed to the trial court's discretion and

---

[6] *See* footnotes 3 and 4, *supra*, for the text of the instructions.

the court's ruling on such will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984); *Perez v. Embree Constr. Co.*, 228 S.W.3d 875, 885 (Tex. App.—Austin 2007, pet. denied); *Trinity Indus., Inc. v. Ashland*, 53 S.W.3d 852, 869 (Tex. App.—Austin 2001, pet. denied). A trial court abuses its discretion if it rules arbitrarily, unreasonably, or without regard to guiding legal principles or rules without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).[7]

We begin with DH's general assertion that MHI's witnesses were inconsistent and lacked credibility concerning the importance of the desired information and reasons for termination. The jury as the factfinder was the sole judge of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819. We do not reassess credibility on appeal.

The issue submitted to the jury inquired whether a material breach of contract had been committed. MHI relied on DH's failure to furnish documentation by a contractual deadline as the material breach. The jury had in front of it evidence concerning the variety of deadlines in the contract, including testimony from MHI's executives that not every deadline in the contract would justify termination of the contract if breached. There was testimony that a delay in closing caused

---

[7] MHI states its issue in terms of the trial court having erred in denying MHI's motion for new trial because the jury's answer to Question 1, "Was Defendant's [DH] conduct in this case a material breach of contract between the parties?," was against the great weight and preponderance of the evidence, or alternatively, is not supported by factually sufficient evidence. However, as noted above, we review a trial court's denial of a new trial under an abuse of discretion standard of review. In an abuse of discretion review, factual and legal sufficiency are not independent grounds for review, but are simply relevant factors in assessing whether the trial court abused its discretion. *See, e.g.*, *Armstrong v. Collin County Bail Bond Bd.*, 233 S.W.3d 57, 62 (Tex. App.—Dallas 2007, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). Accordingly, MHI's factual sufficiency concerns are subsumed within our abuse of discretion analysis.

by a failure to furnish the documents by the contractual deadline would not have had an effect on the overall project. The jury had before it evidence that changes requested by the builders had caused a delay that contributed to DH's inability to complete the documentation on time. The jury also had in front of it testimony from Mr. Horne, president of Wilshire Homes, the other builder in the subdivision, that the information was adequate to verify costs, received in time to do so, and Wilshire had closed on the first phase lots. An MHI representative testified that the information provided to each builder was the same. The trial court did not act without regard to guiding principles or rule without evidence by failing to set aside a jury verdict supported by the evidence. Having concluded that the trial court did not abuse its discretion, we overrule issue six.

### Conclusion

For the reasons set forth above, we overrule MHI's issues on appeal. We affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear;
   Chief Justice Law Not Participating

Affirmed

Filed: August 20, 2008

15