GODDING, PLAINTIFF IN ERROR, v. DECKER ET AL., DEFENDANTS IN ERROR.

1. VENDOR AND PURCHASER.

The vendee under an executory agreement to purchase real estate has a right to insist upon a marketable title—one without defects of which he could lawfully complain.

2. SAME—FINAL RECEIPT.

That the vendor holds only a final receipt, and not a patent for the land, is not a defect of which the purchaser can complain.

3. RESCISSION.

A decree of rescission will not be entered, if at the time of the hearing the plaintiff is able to remedy the defect complained of and make the title which he undertook to convey.

4. SAME.

It is generally held that a party may not rescind a contract without returning or offering to return the fruits of the agreement, and restoring so far as he may the other to his possession.

5. FINAL JUDGMENT.

No final judgment can be properly entered without disposing of the case as to all the defendants served.

6. PARTIES.

At common law whenever a contract, whether written or verbal, was

made with two or more persons, their legal interest was joint, and all obligees, covenantees or promisees, if living, were requested to join as plaintiffs, but under section 12 of the Code, where parties jointly interested refuse to join as plaintiffs, they may under some circumstances be made defendants.

*Error to the District Court of Prowers County.*

IN January, 1888, John E. Godding, plaintiff in error, brought suit against James W. Decker on two promissory notes. The first was dated June 28, 1887, for $700, due sixty days after date at the bank of Lamar, and signed by Decker, Descent and Godding. According to the pleadings and proof this note was substituted for one dated March 8, 1887, due three months after date, for the same sum signed by Decker and Descent. This latter note was not paid at maturity, and the one sued on was given to take up and protect the unpaid paper. These facts are of little consequence save to make the transaction intelligible. The second note bore date March 8th, was for the same sum due six months after date. Neither note having been paid at maturity, and the renewal promise of June 28th likewise remaining unpaid, the present suit was brought on both notes against Decker alone. On his motion Descent was made a party defendant but failed to answer. Decker answered, admitted the execution of the notes, and set up that these notes were given in performance of a contract entered into between Godding of the one part, and Decker and Descent of the other, whereby Godding sold, and Decker and Descent bought, blocks 40, 41 and 42 in an addition to the town of Lamar. The defendant then averred that he was induced to enter into the contract by the fraudulent representations of Godding concerning his title to the property. At the date of the contract, March 8th, Decker and Descent paid Godding $700 in cash, and executed these two notes for the balance of the consideration. Decker averred that Godding was without a valid and marketable title, and that the title was in the government. Decker admitted his refusal to pay the notes, and

based his refusal upon the failure of title. In the prayer with which his answer concluded, he asked that the contract be adjudged null and void, and that it be rescinded as to him, and offered to reconvey his undivided one half of the premises. The answer contained no statement that the possession of the premises had been surrendered or any offer to surrender or reconvey other than what is contained in the prayer as stated.

The defendant Decker then undertook to set up a counter-claim on his behalf, and in it substantially averred that on the 7th of March he, with Frank Descent, made a contract with Godding, whereby in consideration of $700 cash paid, and $1,400 more to be paid in two installments, three and six months from the date of the contract, Godding agreed to sell to them the described property. Decker then averred that, for the purpose of defrauding him, Godding fraudulently represented that he had a good title and would convey. These averments were followed by an allegation that Godding had no valid and marketable title, but that it was at the time of the contract and afterwards in the government of the United States. He averred damage in the sum of $350, which was one half of the sum paid on the original contract, and prayed that the contract be adjudged null and void and rescinded, and offered to reconvey, and asked judgment for the specified sum. The counterclaim contained no statement concerning the possession or surrender, and was without any averment of an offer to rescind, or an offer to reconvey, prior to the suit. The plaintiff replied and denied all the allegations, and then set up that when the bargain was made and the money paid he executed a bond to Decker and Descent in the penalty of $4,000, which recited that Godding had agreed to sell Decker and Descent certain described property, and that the bond had for its condition that, if Decker and Descent should pay the notes at maturity, and the taxes on the blocks, Godding should, on the completion of the payments, execute and deliver a good and sufficient warranty deed to Decker and Descent, or to such persons as

they might name. The bond recited that in case of a failure to pay, Godding could treat Decker and Descent as tenants holding over, or might enforce the payment of the notes. The bond further provided that, if the purchase money should not be paid according to the tenor of the notes, then Decker and Descent should forfeit that part of the consideration paid. In his reply Godding stated that on the 8th of March he held a receiver's receipt for the land, and that no contest respecting his entry was pending in the land office, although he admitted that one Carrie Myton had filed a protest in the land office at Lamar, protesting against the making of any title to him. The protest was dismissed, and the receiver's receipt issued prior to the time the contract was made, and these facts seem to have been fully known and discussed between the parties at the time of the sale. The case was tried largely on a stipulation which disclosed the issuance of the receipt on the 23d of February, 1887, the platting of the land, the making of the contract as stated in the pleadings, and its performance to the extent mentioned. The bond was set out, the record of the receiver's receipt stated, and by express agreement the controversy was narrowed to the consideration of four matters. First, the circumstances of the execution of the paper signed by Decker, Descent and Godding. Second, Godding's representation as to his title to the premises. Third, the knowledge which Decker and Descent had concerning the situation of the title. Fourth, the proof as to the title which was to be attacked. This was to be made subject to objections by the production of a transcript from the land office in the matter of Carrie Myton's protest, and sundry letters from the officers of the land department of the government concerning the protest and its disposition.

Descent and Decker were fully informed concerning the status of Godding's title, and they bought and took the bond knowing that he held a receiver's receipt, issued after a protest had been filed by Carrie Myton in the local office where Godding's application was pending. The only evidence offered under the stipulation concerning the proceedings in the

land office may be conveniently subdivided into three parts. The first called " exhibit C " appears to be a kind of docket recital of what was done in the local land office. It is a chronological statement by the register of the land office of what was done, but contains no copies of any instrument filed, nor any copies of papers showing what was done otherwise than as may appear from these docket entries. The evidence was objected to but admitted. The defendant followed this proof by a copy of a letter from the commissioner of the land office reviewing the proceedings of the local officers, and concludes with an order which in effect undertakes to suspend the entry and reinstate the case for hearing. A rehearing was had, the original action of the local officers reaffirmed, and this action was apparently again subjected to review in the land office at Washington. The plaintiff introduced the commissioner's letter showing that the department sustained the action of the local officers and affirmed the validity of the entry. This last letter was dated August 31, 1889, and was some five months prior to the final decree in the case. It is contended that an appeal was taken from this decision of the commissioner to the secretary of the interior, who is the head of the land department, but it is proven only by this recital in exhibit C :—" Appeal filed November 19, 1889, and transmitted to the Commissioner G. L. O. December 24, 1889."

The evidence disclosed that Decker and Descent went into the possession of the property at the time of the making of the contract and dealt with it as owners, and negotiated with divers parties with reference to the sale of a portion of the lots embraced in the blocks which they purchased.

On this record and proof a decree was entered which substantially recited that Godding was indebted to Decker for $350, with interest at ten per cent from March 8, 1887 ; that he should recover nothing on his promissory notes, and that the contract between Godding and Decker and Descent should be rescinded and be held null and void as to Decker, and that Decker should reconvey an undivided one half in-

terest in the property acquired by virtue of the contract. An execution was ordered accordingly. There was no finding, disposition, or determination of the controversy in so far as regarded Descent, although it appeared that a summons was issued to him on October 4th, and served October 9th. Descent was thus brought into the case by process, but his rights and interests, and Godding's rights and interests as to him, were left wholly undetermined.

To review this judgment and decree Godding sued out a writ of error.

Mr. BYRON L. CARR and Messrs. STEELE & MALONE, for plaintiffs in error.

Mr. CLARENCE WAY and Mr. JAMES S. McGINNIS, for defendants in error.

BISSELL, J., delivered the opinion of the court.

In many particulars the contract under consideration was executory. It had not been concluded by the transfer of title, and the balance of the consideration was to antedate in its payment the delivery of the deeds. It therefore follows that Decker and Descent are not brought within the scope of the principle which obligates them to resort to the covenants in the deed for their remedy, but they are entitled to set up a want of consideration, and the defects in the title, if any, when sued for the purchase price. Their right to insist upon a marketable title is equally clear. It is now almost universally conceded that an agreement to make a good title is implied in every executory contract for the sale of lands, and that the purchaser cannot be compelled to accept one that is defective unless he has expressly agreed to receive whatever the vendor may be able to convey. *Powell v. Conant et al.*, 33 Mich. 396 ; *Murphin v. Scovell*, 41 Minn. 262 ; *Moore v. Williams*, 115 N. Y. 586 ; *Swan v. Drury et al.*, 22 Pick. 485 ; Rawle on Covenants for Title (4th ed.), p. 43.

The agreement concerned real property, and by the terms

of the bond Godding agreed to sell to Descent and Decker the premises named in the instrument. The implied obligation raised by the terms of the instrument was that he should transfer title without defects of which the defendants could lawfully complain. It must be ascertained what title Godding had and what the record discloses concerning its alleged imperfection. It must be conceded that the fee was in the government. Godding only held the receiver's receipt for the purchase money. That this is a good title concerning which parties may contract, and which a vendee will be bound to take if it be evidenced by receipts properly executed by the officers of the government, can scarcely be questioned. This matter is fully covered by the statute and amply settled by a long course of federal adjudication. The Colorado statute declares in section 1310 that the certificate of the register and receiver of the purchase of any tract of land shall be deemed and taken as evidence of title. It is declared to be superior to all other evidence of title to government land, except a patent from the government for the same identical tract. Land thus entered has always been held to be the subject of contract and sale, and the receipt of the money and the issuance of the certificate have universally been held to be such a segregation of the land from the public domain as to entitle the party to his patent, and to warrant legal proceedings for the purposes of procuring it. *Carroll v. Safford*, etc., 3 How. U. S. 441; *Meyers v. Croft*, 13 Wall. 291; *Simmons v. Wagner*, 101 U. S. 260; *Deffeback v. Hawke*, 115 U. S. 392.

Under these authorities Godding had a title concerning which he had a right to bargain ; it was marketable, and it was not, in legal contemplation, clouded by defects of which the vendees had a right to complain, unless in some legitimate manner it was established that the Myton protest constituted such an imperfection. There are many reasons why this cannot be true.. There is a broad distinction between the rights of a contestant and those enjoyed by one who simply files a protest to inform the government that the ap-

pellant is without right to enter the land. If the register and receiver see fit to take the applicant's money and issue him a receipt which evidences his purchase of the land, the effect of that certificate cannot be destroyed by any subsequent appeal which may be taken by the protestant. It is undoubtedly true, under the federal statutes, sections 453–2478 R. S., that the disposal of the public land is committed to the authority of the officers of the interior department, and they may withhold the certificate of purchase pending a subsequent hearing concerning the right of the claimant to enter. It is equally true that, if the certificate has been issued, the land office may, under certain circumstances, cancel the entry. *Cornelius v. Kessell*, 128 U. S. 456.

This concession does not affect the present case, since the question here is, whether the title was rendered defective by the appeal which it is contended the protestant took from the decision of the commissioner of the general land office to the secretary of the interior. It is not discussed, nor is it decided, what effect on the title the action of commissioner Sparks in suspending the entry had with regard to it, since subsequent to this action the entry was affirmed and the action of the local land officers sustained. This was done prior to the trial of this suit, so that when the proofs were made, and the decree entered, Godding had a title evidenced by an unsuspended receipt which was in full force and affected by nothing unless by the alleged appeal. The right of appeal is only given in those cases where questions arise as to the right of pre-emption between different settlers: U. S. Revised Statutes, § 2273.

The right of appeal being thus expressly conferred upon certain classes of persons, it must, by the very force of the expression, be held to exclude protestants from the class to which the right is given. The legitimate result of this reasoning is, that the attempted appeal by Myton from the commissioner to the secretary did not constitute a defect which entitled the vendee to insist upon the rescission of the contract, and permitted him to defend in an action for the re-

covery of the purchase money. If this conclusion were unsatisfactory and not so adequately sustained, it would still be held that there was no proof of any legal defect justifying a rescission. The exhibit which the defendant offered in evidence to show that an appeal had been taken was not competent proof of any such fact. The notice of an appeal in accordance with the rules and practice of the land office, or a certified copy of it if admissible, was the only legitimate evidence of the taking of that step.

With respect to the character of the title, it only remains to consider whether it is enough for the vendor to be able to make a good title at the time of the decree, or whether his title must have been perfect at the time he entered into the agreement. It seems to be well settled that the court is not authorized to decree a rescission, if at the time of the hearing the plaintiff is able to remedy the defect complained of and make the title which he originally undertook to convey: *Kimball v. West*, 15 Wall. 377; *Diggs v. Curby*, 40 Ark. 420.

It is conceded that this principle is necessarily subject to some modifications, and that the plaintiff must respond to whatever damages the vendees may have sustained by reason of the delay in the completion of the agreement. The exception need hardly be stated, since the record is barren of testimony respecting this matter. It is only referred to lest on the subsequent trial the rule may be assumed to have been too broadly stated.

The force and application of these principles is not destroyed by the form of the defense, nor affected by the circumstance that Decker alleged fraud in the procurement of its execution. In respect of this particular feature of the case, the record is barren of any evidence which even tended to show misrepresentation on the part of the vendor concerning his title. Decker stated on the stand that the situation and the character of Godding's title had frequently been made the subject-matter of discussion prior to the purchase, and that the execution of the agreement had only been delayed to await the delivery of the receiver's receipt, which

both parties assumed would make a valid title concerning which they might contract. In respect of this matter, the present seems to be one of those cases where what appeared like a valuable acquisition at the time it was initiated turned out to be a bad bargain, from which the vendee would like to escape.

Decker was not entitled to defend the action for the consideration money, because of the character of the title which Godding was able to convey. He was equally without right to insist on the rescission of the contract because of the alleged fraud of the vendor.

That part of the decree which rescinds the contract is not justified by the record. It is quite generally held that a party may not rescind a contract without at least returning, or offering to return, the fruits of his agreement, and restoring so far as he may, either in fact, or by tender, the other to his original possession. Decker's answer contained no allegation that he had surrendered or had offered to surrender possession, or that he had conveyed, or offered to reconvey any title which he had, or that he had released, or offered to release Godding from his contract. *Martin v. Chambers*, 84 Ills. 579; *Dennis et al. v. Jones*, 44 N. J. E. 513; *Garrett et al. v. Lynch*, 44 Ala. 204; *Knuckolls v. Lea*, 29 Tenn. 577; Warvelle on Vendors, chap. 31, p. 849.

The defendant was as negligent in his proof as he was in his plea, for he failed to show any offer to perform on his part, or any demand to rescind, and at the date of the trial remained in possession and control of the property. He did not therefore entitle himself to a decree for the rescission. There is another reason equally fatal to the decree entered. It is in the form of a judgment in favor of Decker and against Godding for the rescission of the one half of a joint contract and the recovery of an aliquot part of a joint right in favor of one who occupies the position of a plaintiff in an action. The action as originally brought was on two promissory notes against Decker alone, to recover that which, under our statute, he was severally liable to pay. It was no defense to him

that the joint maker was not sued.  It appears that after the institution of the action Descent was on Decker's motion served with process and brought into the suit.  This may be of small consequence in the determination of the question which will be discussed, but it is referred to to show the anomalous character of the result arrived at.  Descent never appeared in the action.  Having been served with a summons it was indispensable that some action be taken concerning this defendant.  Descent was before the court, and no final judgment could properly be entered without disposing of the case as to all the defendants served.  *Bissell et al. v. Cushman*, 5 Colo. 76.

Regardless of this technical defect which would necessitate the reversal of the judgment, it must be adjudged upon a broader basis that Decker's cross complaint cannot be sustained.  It will be recollected that after setting up his defense of a want of consideration and fraud inuring in the agreement, Decker filed a cross complaint setting up the same fraud, and thereby sought to recover from Godding the one half of the $700 which he and Descent originally paid as part of the purchase price.  This he was permitted to do, and judgment passed in his favor.  From the cross complaint it appeared that the agreement was between Godding of the one part and Decker and Descent of the other, and that the only promise which Decker made was to convey to them jointly on the payment of the consideration specified.  It necessarily follows that if the cause of action set up in the cross complaint grows out of the contract entered into between Godding of the one part and Decker and Descent of the other, it was a joint right running to Decker and Descent, and not a several contract running to each.  It was universally true at the common law that wherever a contract, whether written or verbal, was made with two or more persons, and their legal interest was joint, all the obligees, covenantees or promisees, if living, must join as plaintiffs.  There was no such thing as a joint and several right, corresponding to the joint and several liability of various promisors.  It

was either several so that one only could sue, or joint so that all must sue. This legal distinction has not been varied by any statute in this state except in one particular. Doubtless according to one provision of our Code of 1887, section 12, under some circumstances where parties jointly interested refuse to join as plaintiffs they may with proper pleadings be made defendants, and the sole plaintiff thereby overcome this limitation on his right to sue. Decker did not attempt to bring his cross complaint within the scope of that provision. He simply filed a cross complaint and sought to recover his half of a joint cause of action. This he could not do. The proofs amply demonstrate that it was a sale to both, a contract with both, and whatever was done concerned their common interest. If any cause of action came to them by reason of the contract it came to them jointly, and they must unite in whatever action they would bring. This principle was plainly recognized in *Exchange Bank v. Ford*, 7 Colo. 314, where the court construed that section of the code which authorizes an action to be brought against one when there may be a liability on the part of several. It is wholly unnecessary to enter into a discussion to establish that where one party files a cross complaint he thereby becomes a plaintiff, and can only maintain his remedy under that pleading, by proof which shall show that he, on whose behalf it is filed, has a cause of action which he is entitled to maintain against the plaintiff in the suit. This did not appear in the present case, and therefore under the cross complaint the court could not rightfully enter a judgment in favor of Decker for the one half of the money originally paid.

The judgment for the one half of the purchase money necessarily depends on that part of the decree which rescinds the contract. When it is determined that neither the alleged fraud nor the character of the title brings this right to Decker, it concludes him as to the payment which was made when the contract was entered into. By the express terms of the agreement the vendees were to forfeit what they paid on the 8th of March, if they failed to pay the balance of the agreed

price.   So long then as the agreement was untainted by fraud, and there was no breach of the implied covenant to convey a good title, no cause of action for any part of what had been paid could arise in favor of Decker and Descent, or either of them.

These are all the questions which it is deemed necessary to consider, either for the purposes of the present decision, or with respect to any subsequent trial which may hereafter occur.   For the errors committed by the court with respect to the matters discussed this judgment must be reversed and remanded.

*Reversed.*