**C. G. JOYCE, Jr., et al.,
Plaintiffs-Appellees,**

**v.**

**Edward Mike DAVIS,
Defendant-Appellant.**

**No. 75–1670.**

United States Court of Appeals,
Tenth Circuit.

Submitted May 20, 1976.
Decided July 26, 1976.

---

Edward C. Eppich, Denver, Colo., for plaintiffs-appellees.

Richard H. Shaw, Denver, Colo. (Stanley L. Spangler, Denver, Colo., on the brief) of Shaw & Coghill, Denver, Colo., for defendant-appellant.

Before McWILLIAMS and BARRETT, Circuit Judges, and STANLEY,* District Judge.

BARRETT, Circuit Judge.

In this diversity case, Edward Mike Davis (Davis) appeals from a judgment and order obligating him to pay a $60,000 bonus relative to an oil and gas lease. The lease in question was executed between C. J. Joyce, et al. (plaintiffs), as lessor, and Davis' company, Tiger Oil Company, as Lessee.

During the latter part of 1973 Tiger Oil contacted plaintiffs relative to leasing certain lands in Arapahoe County, Colorado, for oil and gas development. The proper-

* Of the District of Kansas, sitting by designation.

ties in question were then considered very "active". Davis had leased the same lands from the same plaintiffs in 1967. At that time he paid plaintiffs a bonus of $5,900. All the parties assumed plaintiffs' interest to be an undivided ⅜ interest in approximately 320 acres.

The lease at issue here was executed by the parties on December 10, 1973, at which time Davis gave plaintiffs his post-dated bonus check (January 10, 1974) for $60,000. Plaintiff Joyce testified that although he had wanted cash, he accepted the post-dated check because he thought Davis would pay it since Davis had related that he was worth four or five hundred million dollars.

Prior to January 10, 1974, Davis notified plaintiffs not to cash the check because he would not be able to cover it until later in the month. On January 25, 1974, Davis executed a second lease agreement offer which was given to plaintiffs on January 26, 1974 for their approval. This offer was for an oil and gas lease of the same lands with the same bonus as that committed under the December 10, 1973 lease, but it deleted the prior drilling commitment.

This offer was unilaterally conditioned by Davis' requirement that it be accepted by plaintiffs by 11:00 A.M., Sunday, January 27, 1974. This requirement was not made known or otherwise communicated to plaintiffs until January 28, 1974, when they received Davis' telegram to that effect. Prior to the receipt of Davis' telegram, the plaintiffs had telegrammed their acceptance of Davis' offer (the second lease agreement) on January 27, 1974.[1] The acceptance telegram was received by Davis on January 28, 1974. He promptly stopped payment on his $60,000 check.

Plaintiffs filed suit on August 15, 1974 to enforce payment of the $60,000 bonus. Plaintiffs sought recovery for (1) a wrongful stop payment order issued in connection with the $60,000 bonus check, and (2) breach of lease agreement based upon Davis' failure to honor his bonus check.

Davis contended that there was a failure of consideration, mutual mistake, fraud, and misrepresentation. He counterclaimed for rescission of the contract and for costs. Davis argued that a reservation in a royalty deed giving rise to plaintiffs' interest created an ambiguity which limited their interest, thus making it impossible for them to convey a full ⅜ interest. (We deem it worthy to note that after suit was filed, but before trial, a corrective deed was obtained and recorded by plaintiffs without demand having been made by Davis.)

In rendering judgment for plaintiffs, the District Court found that the uncertainty with respect to the original royalty deed did not create an absolute defense on the part of Davis relative to his obligations as the lessee under the lease contract. The court also found that neither fraud, mistake nor misrepresentation were present, and that the cloud on plaintiffs' title gave rise only to an obligation on the part of plaintiffs to protect and defend their represented title upon demand. We have previously noted that no demand was made upon the plaintiffs by Davis, but that even so, the plaintiffs obtained a corrective, clarifying deed after this suit was filed.

Findings of the trial court will not be disturbed on appeal unless they are held to be clearly erroneous. Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A.; *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358 (10th Cir. 1974). Appellate courts do not try factual issues de novo. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Sims Consolidated, Ltd. v. Irrigation and Power Equipment, Inc.,* 518 F.2d 413 (10th Cir. 1975), cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141. On appeal we must view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party. *Hart v. Western Investment and Development Company,* 417 F.2d 1296 (10th Cir. 1969). The views and findings of a federal district

---

1. This acceptance telegram was sent in accordance with Davis' chief land man's instructions (without reference to any particular time of day) that plaintiffs should telegram their acceptance of the offer on January 27, 1974.

judge which have support in the record, involving the interpretation and application of the law of the state of the federal trial judge's residence, carry extraordinary force on appeal where there are no decisions on point or none which provide clear precedent. *United States v. Hunt,* 513 F.2d 129 (10th Cir. 1975); *Stevens v. Barnard,* 512 F.2d 876 (10th Cir. 1975); *United States v. Wyoming National Bank of Casper,* 505 F.2d 1064 (10th Cir. 1974); *United States Fidelity and Guaranty Co. v. United States,* 446 F.2d 851 (10th Cir. 1971).

On appeal Davis contends that the court erred in (1) holding him liable on his promise to pay, (2) relying on a corrective deed to show good faith, and (3) in ordering specific performance.

## I.

Davis contends that the court erred in holding him liable on his promise to pay. He argues that the lease negotiations were carried out under a mutual mistake of fact (ambiguity within the royalty deed); that the mistake was substantial and amounted to a failure of consideration; and that where consideration has failed, cancellation of a promise to pay is justifiable. Davis further argues that specific performance should not have been granted and that he should have been granted the relief of rescission.

In disposing of the above contentions the trial court found:

>  . . . [I]t is my conclusion that the existence of an uncertainty with respect to the legal effect of the deed does not amount to a failure of consideration within the legal sense, . . .
>
> \* \* \* \* \* \*

I do not find on this record that there is any active misrepresentation, and certainly not the common law elements of fraud required in Colorado . . .

> \* \* \* \* \* \*

>  . . . [T]here wasn't a mutual mistake involved that (sic) the existence of the ambiguity in the instrument was such a mistake to vitiate the parties' agreement.

We hold that the trial court did not err in finding that Davis is liable on his promise to pay. Significantly, we believe, Davis' own expert testified that (1) the "royalty" deed in question was not a nullity, (2) it was possible even under the original "royalty" deed, that Davis may have received a full ⅜ undivided interest, (3) certain corrections could clarify Davis' interest,[2] and (4) the corrective deed filed of record by plaintiffs "cleared up" any problem involving the reservation that created the ambiguity in the original instrument entitled "Royalty Deed" relating to plaintiffs' oil, gas and mineral interest in the lands.

The relative necessity of an adequate, merchantable title under Colorado law was discussed in *Godding v. Decker,* 3 Colo.App. 198, 32 P. 832 (Colo.App.1893):

> With respect to the character of the title, it only remains to consider whether it is enough for the vendor to be able to make a good title at the time of the decree, or whether his title must have been perfect at the time he entered into the agreement. It seems to be well settled that the court is not authorized to decree a rescission if, at the time of the hearing, the plaintiff is able to remedy the defect complained of, and make the

---

**2.** Davis' expert, J. O. Young, testified that it was common practice in the oil industry to allow one a reasonable time to correct title defects after they "come to light":

Q. Let me try it this way, Mr. Young: Many times title defects occur even after a title opinion has been rendered, the drilling opinion; is that not correct?

A. Sometimes occur after that, and sometimes come to light after that.

Q. Come to light. Thank you, sir.

And when they do come to light, isn't it the practice in the oil industry to give people reasonable time to clean up the title or to take such corrective action as is necessary, if it can be done?

A. Usually, yes.

Q. And they are given a reasonable time to do that; is that not correct?

A. A reasonable time, yes; unless there is a specific part of an agreement that dictates otherwise.

title which he originally undertook to convey.

32 P. at 835.

Rescission is proper in Colorado where there is a substantial breach, irreparable injury or where damages would be inadequate. However, rescission does not come into play or afford relief for variances from the terms of a contract. *Kole v. Parker Yale Development Company,* 536 P.2d 848 (Colo. App.1975).[3] Furthermore, although a contract may be rescinded or discharged by conduct inconsistent with its continued existence [*Lansdale v. Geerlings,* 523 P.2d 133 (Colo.App.1974)],[3] a party may not both affirm and disaffirm a contract or affirm in part and disaffirm in part. *Kelley v. Silver State Savings and Loan Association,* 534 P.2d 326 (Colo.App.1975).[3] Colorado law also dictates that a rescission must be timely made and exercised with dispatch following discovery of the grounds giving rise to the right. *Gladden v. Guyer,* 162 Colo. 451, 426 P.2d 953 (Colo.1967); *Elwood Edwards Auto Sales v. Kinsey,* 123 Colo. 52, 225 P.2d 59 (Colo.1950).

■ Applying the cited law of Colorado to the facts of this case, we hold that the trial court properly denied rescission. Davis leased the identical tract in question in 1967 with the same challenged royalty deed then of record, at which time he paid plaintiffs a bonus of $5,900. Six years later, on December 10, 1973, he leased the tract a second time and offered to pay a bonus of $60,000. Subsequent thereto, on January 25, 1974, he made a second offer to lease the lands and to pay a $60,000 bonus.

It was not until January 9, 1975, approximately eight years after he had first leased the land, and one year after he had leased it for the second time, that Davis received an expert's opinion that the "royalty deed" giving rise to plaintiffs' title contained an ambiguity that should be corrected. Utiliz-

ing this opinion as a springboard—and without in anywise making any demand upon plaintiffs that the ambiguity be corrected—Davis argues that he is not obligated to pay the $60,000 bonus because there was a mutual mistake (ambiguity in the title) which caused a failure of consideration. This type of "bootstrapping" does not pass judicial muster, particularly in light of the rule laid down in *Godding v. Decker, supra.*

## II.

In view of our disposition of the appeal on the basis above set forth, we find the remaining allegations of error to be without merit.

WE AFFIRM.

---

**3.** Although we realize that these appellate opinions were not selected for official publication under Rule 35(f), Colorado Appellate rules, and as such are not necessarily binding upon Colorado trial judges or considered *stare decisis,* we nevertheless consider them to be persuasive, enlightening authority as they relate to the issues presented herein.