**Robert L. COURTNEY, Plaintiff,**

**v.**

**SAFELITE GLASS CORP. and Robert Morosky, Defendants.**

**Civ. A. No. 91–2223–JWL.**

United States District Court,
D. Kansas.

Dec. 16, 1992.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for plaintiff.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, Christel E. Marquardt, Levy and Craig, P.C., Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is before the court on defendant Robert Morosky's motion for judgment on the special verdict (Doc. # 211),

both defendants' alternative motion for judgment as a matter of law or new trial (Doc. # 213), and plaintiff's motion for supplemental damages (Doc. # 218). A trial was held from September 10 to September 23, 1992. On September 25, 1992, the jury returned a special verdict. The jury found that defendant Morosky did not discriminate against plaintiff Robert L. Courtney on the basis of his age. However, the jury found that defendant Safelite Glass Corporation ("Safelite") did discriminate against the plaintiff on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA") and the Kansas Age Discrimination in Employment Act ("KADEA"). It also found that this discrimination was willful. The jury awarded the plaintiff $132,368 for his lost wages under the ADEA and the KADEA and $2,000 for his pain, suffering, and humiliation under the KADEA. In addition, the jury found that defendant Safelite breached an implied employment contract with the plaintiff. As damages for this breach of contract, it awarded the plaintiff $15,000 for his loss from the sale of his house, $166,768 for his future lost wages, and $96,997 for his future pension damages. The jury did not award a specific amount for past wage damages from the breach of the implied contract but merely marked the space on the verdict form with a check mark, apparently indicating that the amount was already covered by the lost wages award under the ADEA and KADEA section of the verdict form.

The motions at issue were argued at a hearing on November 30, 1992. The court ruled on certain aspects of the motions at the hearing and took the balance under advisement. The motion of defendant Morosky for judgment on the special verdict (Doc. # 211) is hereby granted for the reasons set forth on the record at the hearing. Safelite's motion for judgment n.o.v. or judgment as a matter of law (Doc. # 213) is denied for the reasons set forth below. Safelite's motion for a new trial (Doc. # 213) is conditionally denied for the reasons set forth below.

The plaintiff's motion for supplemental damages (Doc. # 218) is hereby granted in part and denied in part. The portion of the plaintiff's motion requesting attorney's fees is granted, with the amount to be determined pursuant to D.Kan. Rule 220, for the reasons set forth on the record at the hearing. The remaining portions of this motion will be discussed below.

## I. FACTS

Plaintiff Courtney was born January 9, 1933 and worked for Safelite from 1980 to 1989. From 1982 to 1989, he was vice president of human resources. Safelite underwent major corporate changes during the period of the plaintiff's employment. Initially, it was part of Lear Siegler, Inc., a publicly traded company. Safelite was then purchased and held privately by a joint venture, Forstmann Little & Co., which undertook an extensive expansion program. This was carried out by acquiring other companies in the same industry and assimilating them into Safelite's corporate structure. Several different chief executive officers headed the company during this period, and many key Safelite employees left the company.

The plaintiff also considered leaving the company. In an effort to retain the plaintiff and other management level employees, Ernest Malbin, Safelite's chief executive officer at the time, assured the plaintiff shortly after the takeover "that Safelite Glass Corp. was in need of his and other people's services and that if he continued to perform his work satisfactorily, as he had in the past, his employment with Safelite Glass Corp. would continue." The plaintiff then decided to stay with Safelite. The jury found that this constituted an implied contract between Mr. Courtney and Safelite. Ernest Malbin was replaced by Ron Kalich as chief executive officer, who in turn was replaced by defendant Robert Morosky in March of 1989.

As an incentive to remain at Safelite, Mr. Courtney was also given a stock option plan in April of 1987 which gave him the right to purchase 25,000 shares of Safelite stock at $10.00 per share. The plaintiff has not shown any period when the value of the stock exceeded $10.00 per share. On

July 10, 1989, the capital of Safelite was restructured by a reverse stock split. The number of outstanding shares held by each shareholder was reduced. The option price to be paid was adjusted to reflect the effect of the reverse stock split and a dividend was paid in corporate debt.

The plaintiff was 56 years old when he was terminated on June 29, 1989. He was terminated by Safelite Executive Vice President Richard Krant, who was under the age of 40 at the time. Defendant Morosky and Chief Financial Officer Stephen Pohlit concurred in the decision to terminate the plaintiff. The jury determined that age bias was a predominate factor in Mr. Courtney's termination though it did not ascribe that age bias to Mr. Morosky.

Mr. Courtney left his position on June 29, 1989 but continued to be paid until December 31, 1989. He retained all medical, dental, life insurance, and other "COBRA" benefits until the end of 1989. He began employment with Electrolux Corporation as personnel director December 1, 1989 and continued there until December 1, 1990. Mr. Courtney had to relocate to take the Electrolux position and was forced to sell his house in Wichita for a $15,000 loss from his purchase price. The plaintiff earned $9823.30 from Electrolux in 1989 in addition to his salary from Safelite. In mid 1991, Mr. Courtney was employed by the Arizona Public Service Co. as head of its personnel department. Mr. Courtney recently took a position with Avnet in Dallas, Texas.

The plaintiff's expert, Dr. Sturdevant, calculated that Mr. Courtney's lost wages from January 1, 1990 to September 9, 1992 (the originally scheduled beginning date of trial) were $66,184. This did not take into account the $9823.30 he received in salary from Electrolux in 1989. He also calculated that the present value of Mr. Courtney's expected earnings, if he had kept his position at Safelite until age 65, was $530,-625.00. The present value of Mr. Courtney's current employment with Avnet to age 65 was calculated to be $363,857.00. The jury determined that the difference between these amounts, i.e. $166,768.00, was the plaintiff's lost wages from the breach of the implied contract.

## II. JUDGMENT AS A MATTER OF LAW

■ Safelite seeks judgment as a matter of law under Fed.R.Civ.P. 50(b) on several damage issues.[1] No entry of judgment has yet been made, so the motion is timely. It contends that it is entitled to judgment as a matter of law on, essentially, three damage issues, which were not ruled on by the court at the November 30, 1992 hearing on post-trial motions. These are 1) that there was a lack of evidence to support the jury's award of $15,000 in damages for the plaintiff's claim for his loss from the sale of his house; 2) that the jury's award for back pay did not set-off the $9823.30 the plaintiff earned at Electrolux in 1989 after he was terminated from Safelite; and 3) that the jury's award of $132,368 was not supported by the evidence and exceeded the amount sought in the pretrial order. Safelite may not raise these issues in its post-trial motion for judgment as a matter of law because it failed to raise these issues with particularity in its motion for judgment as a matter of law before the case was submitted to the jury. Therefore, Safelite's motion is denied.

Motions for judgment as a matter of law "may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and *the law and the facts on which the moving party is entitled to the judgment.*" Fed. R.Civ.P. 50(a)(2) (emphasis added). When a motion for judgment as a matter of law is made before the case is submitted to the jury "such a motion may be renewed" within 10 days after entry of judgment. Fed. R.Civ.P. 50(b). The post-verdict motion is

---

1. Both defendants also sought judgment as a matter of law on a number of liability issues: 1) the claims against defendant Morosky, 2) Safelite's lack of liability under the ADEA and KADEA for discrimination against the plaintiff based on his age, 3) Safelite's lack of liability under the ADEA for willful discrimination against the plaintiff based on his age, and 4) Safelite's lack of liability for breach of an implied contract with the plaintiff. These are denied for the reasons set forth on the record at the hearing.

actually a renewal of the earlier motion made at the close of the evidence. Fed. R.Civ.P. 50(b) advisory committee's note; *See Trotter v. Todd*, 719 F.2d 346, 350 (10th Cir.1983). This post-trial motion "cannot assert new matters not presented in the motion" made at the close of evidence. *Anderson v. United Telephone Co. of Kansas*, 933 F.2d 1500, 1503 (10th Cir. 1991). Though Safelite made a motion for judgment as a matter of law at the close of the evidence concerning its *liability*, it did not suggest any law or facts in that motion which showed that it was entitled to judgment as a matter of law on any of these specific issues of *damages*. Because the post-trial motion is intended to be a renewal of this earlier motion, Safelite may not raise these damage issues for the first time in the post-trial motion. For this reason, the Safelite's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) is denied.

## III. MOTION FOR A NEW TRIAL

Safelite has moved, in the alternative, for a new trial as authorized by Fed. R.Civ.P. 59(a) and 50(b). This motion is timely because judgment has not yet been entered. *See* Fed.R.Civ.P. 50(b). For the reasons set forth below, Safelite's motion for a new trial is denied subject to the following conditions: 1) if the plaintiff does not assent to the remittitur ordered below concerning the award of back pay, that motion for a new trial is granted on the issue of back pay damages under the ADEA and KADEA; and 2) if the plaintiff does not assent to the remittitur ordered below concerning the alleged house sale loss, the motion is granted as to a new trial on that issue of damages alone.[2]

### A. Standard

Motions for a new trial are committed to the sound discretion of the trial court. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Brownlow v. Aman*, 740 F.2d 1476, 1491 (10th Cir.1984). In reviewing a motion for a new trial, the court must view the evidence in the light most favorable to the prevailing party. *Joyce v. Davis*, 539 F.2d 1262 (10th Cir.1976). Moreover, the court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equipment, Inc.*, 464 U.S. at 553, 104 S.Ct. at 848. Neither an error in the admission or exclusion of evidence nor an error in a ruling or order of the court, nor anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties. *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978); Fed.R.Civ.P. 61. "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence." *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir.1983).

### B. Back Pay

Safelite has moved for a new trial based on three issues related to the jury's award of $132,368 for back pay. It argues that a new trial is required because of the following: 1) the jury's award of back pay failed to set off $9823.30 the plaintiff received

---

**2.** Safelite has, in addition to the issues discussed below, moved the court for a new trial for the following reasons: 1) denying a motion in limine to exclude the testimony of Don Hartig and Charlie Rogers, co-employees of Mr. Courtney, 2) denying a motion in limine to exclude any evidence referring to Mr. Morosky's statements concerning a preferred "age profile" for persons who would be hired into positions which were different from the one the plaintiff held, 3) excluding the defendants' exhibits 437 and 438 showing summaries of the ages of all

Safelite home office vice presidents, 4) denying the defendants' objection to the court's Instruction 15, 5) denying the substance of defendants' Requested Instructions 8 and 9, and 6) denying the defendants' objection to the opinion of the plaintiff's expert witness, Dr. Sturdevant, concerning future wage loss claims which did not take into account the statistical probability of the plaintiff's withdrawal from the workforce prior to age 65. These are denied for the reasons set forth on the record at the post-trial hearing on November 30, 1992.

from other employment after he was terminated from Safelite, 2) the jury's award of $132,368 was not supported by the evidence, and 3) the jury's award of $132,368 was beyond the amount requested in the pretrial order, i.e. $66,184. For the reasons set forth below, only the issue of the jury's failure to set off $9823.30 received from other employment is sufficient to grant a new trial on the issue of back pay damages.

### 1. 1989 Electrolux Pay

Safelite argues that a new trial is required because the jury failed to set off from its award of back pay $9823.30 in salary which the plaintiff received after he was terminated from Safelite. The court agrees that it was improper for the jury to leave the plaintiff's 1989 salary from Electrolux out of the back pay calculations. The court grants a remittitur of $9823.30 from the jury's award of back pay and conditionally denies the motion for a new trial of the issue of back pay from Safelite's violation of the ADEA and KADEA.

The plaintiff's expert, Dr. Sturdevant, calculated that Mr. Courtney had lost back pay of $66,184 from the date of his termination to the date of the trial. As will be discussed later, the jury awarded Mr. Courtney double this amount, i.e. $132,368, by applying a different salary growth rate from the one used by the expert. In 1989, Mr. Courtney earned $100,661 from Safelite and $9823.30 from Electrolux. If Mr. Courtney had continued to work at Safelite until the end of 1989, he would not have been able to earn the additional $9823.30 from Electrolux. However, Dr. Sturdevant did not take into account the $9823.30 earned from Electrolux in 1989 because his back pay calculations began on January 1, 1990.[3]

■ A purpose of the ADEA is to make a victim of discrimination 'whole' and to restore him to the economic position he would have occupied but for the unlawful conduct of his employer. *Equal Employment Opportunity Comm. v. Prudential Fed. Sav. and Loan Assoc.*, 763 F.2d 1166, 1172 (10th Cir.1985). The statute grants the court the legal and equitable powers to fashion remedies to fully compensate an employee for his economic injury. *Id.* See 29 U.S.C. 626(b). Those "who prevail under [the] ADEA are entitled to back pay in the amounts they would have earned but for the discrimination, less wages actually earned from other employment that could not have been simultaneously performed with the jobs" from which they were terminated. *Rodriguez v. Taylor*, 569 F.2d 1231, 1243 (3rd Cir.1977). Mr. Courtney's 1989 salary from Electrolux is an amount which he would not have earned if he had not been discriminated against and had continued to work at Safelite. The First Circuit, in discussing a case in which the jury failed to set off money which the plaintiff earned after he was terminated, but prior to trial, held:

> Thus cases like this one call for a simple tabulation of "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits." H.R.Rep. No. 950, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.Code Cong. & Ad.News 504, 528, 535. From these must be subtracted post-termination economic benefits. While in calculating damages the jury is free to select the highest figures for which there is adequate evidentiary support, it may go no higher.

*Kolb v. Goldring, Inc.*, 694 F.2d 869, 872 (1st Cir.1982).

■ The court holds that the jury's award of back pay which did not set off $9823.30 for Mr. Courtney's salary from Safelite in 1989 is not supported by substantial evidence. Thus, the court may grant a new trial on the issue of back pay from the violation of the ADEA. *See White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir.1983). However, the court may also condition the denial of a motion for a new trial on the plaintiff's acceptance of a

---

**3.** According to Dr. Sturdevant's testimony, this was because he was specifically requested by the plaintiff's counsel to begin his calculations as of that date. The expert did not express an opinion that excluding the Electrolux income from his calculations was somehow the appropriate methodology, rather, he left it out because he was not made aware of it.

remittitur. *Holmes v. Wack*, 464 F.2d 86 (10th Cir.1972). The court has the discretion to order a remittitur so long as the jury's verdict is "not the result of passion, prejudice or bias". *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). There is no suggestion or evidence that the jury's award was the result of passion, prejudice, or bias here. Therefore, the court grants a remittitur to reduce the verdict for back pay by $9823.30 subject to the plaintiff's approval. Should the plaintiff not accept the remittitur, the court grants defendant Safelite's motion for a new trial on the issue of back pay resulting from Safelite's violation of the ADEA and the KADEA.

### 2. Jury Award of Back Pay Supported by the Evidence

■ Safelite argues that the jury's award of $132,368 for back pay was not supported by the evidence. Its argument is based on the plaintiff's expert's testimony that Mr. Courtney's lost back wages were only $66,184. Although the court has some sympathy for this argument under the peculiar circumstances here, after careful review of a transcript of the expert's complete testimony, it finds that the argument must fail.

The plaintiff's expert, Dr. Sturdevant, testified on direct examination that he calculated the plaintiff's lost back pay to be $66,184. He testified that he derived this figure using a conservative figure of 4.74% for a growth rate for the plaintiff's estimated income if he had remained at Safelite. A "growth rate" is an average percentage that a person's salary increases from year to year. The salary growth rate of 4.74% was taken from the 40 year average of nonsupervisory persons in the American labor force from 1950 to 1991. Dr. Sturdevant also testified on both direct and cross-examination that, based on the plaintiff's financial information, the plaintiff had an *actual* salary growth rate of 13% per year from the time he began with Safelite in 1980 until he left. He expressed reluctance to use this actual growth rate to calculate the loss because he felt that it was "a very high figure". On redirect examination, plaintiff's counsel asked Dr. Sturdevant to recalculate the plaintiff's lost wages using the plaintiff's actual growth rate. Dr. Sturdevant testified that using the historical 13% growth rate, the amount of plaintiff's lost back wages would probably double.

Assuming by its verdict that the jury gave some credit to Dr. Sturdevant's testimony, the jury was not bound to accept all of the expert's testimony, including his implicit opinion that the lower calculation represented a better estimate of the actual wage loss rather than the higher one. Thus, it could have concluded (and apparently did so conclude) that the plaintiff's actual annual salary growth rate, a fact in evidence in this case, is a better predictor of the plaintiff's salary if he had stayed at Safelite than a national average of nonsupervisory employees. Using Mr. Courtney's actual salary growth rate of 13% and Dr. Sturdevant's opinion that such a growth rate would cause the calculated value for lost back pay, initially calculated to be $66,138, to approximately double, the jury could have concluded that Mr. Courtney was entitled to $132,368 in damages. Viewing this evidence in the light most favorable to the prevailing party, then, this evidence is sufficient to support the jury's award of $132,368 for lost back wages. *See Joyce v. Davis*, 539 F.2d 1262 (10th Cir.1976).

### 3. Amount in the Pretrial Order

Safelite also argues that the plaintiff is limited by the pretrial order to $66,184 for lost back wages. Had this objection been raised in a timely fashion at trial, the court would have been very receptive. However, this argument is without merit now because Safelite is deemed to have implicitly consented to the plaintiff's seeking $132,368 for back wages.

■ "The pretrial order governs the trial and it measures the dimensions of the lawsuit, both in the trial court and on appeal." *Moe v. Avions Marcel Dassault–Breguet Aviation*, 727 F.2d 917, 927 (10th

Cir.), *cert. denied,* 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984). Ordinarily, then, unless the pretrial order is amended, the amount listed in the pretrial order is the limit of the amount of damages which the plaintiff may seek. *See* Fed.R.Civ.P. 16. A pretrial order may not be amended after a final pretrial conference except to prevent manifest injustice. *Id.* However, under Fed.R.Civ.P. 15(b), the pleadings may be treated as having been amended to include new issues when those issues are presented in evidence and the parties either expressly or implied consent to their presence in the trial. Fed.R.Civ.P. 15(b) may be applied to amend pretrial orders. *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir.1982) ("[W]hen evidence is presented on an issue beyond the scope of the pretrial order, Rule 15(b) may be invoked to effect an amendment of the pretrial order.")

■ Here Safelite never objected and is deemed to have impliedly consented to the plaintiff's introduction of a claim for $132,368 in back pay, and the pretrial order will be amended to include this claim. "The test of consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Id.* "Implied consent is found where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection. Under the terms of Rule 15(b), the objection must be on the ground that the evidence is not within the issues raised by the pleadings." *Id.* at 457. At no time, including when Dr. Sturdevant testified that the amount of the plaintiff's lost back wages "would probably double" from $66,184 if an actual growth rate of 13% per year was used, did Safelite object on the grounds of that amount being beyond the pretrial order. Moreover, Safelite had a fair opportunity to defend because this evidence was presented during the plaintiff's case in chief, when Safelite had not yet presented any witnesses. Also, Safelite manifested

consent when it did not seek judgment as a matter of law at the close of the evidence on the specific issue of damages for back pay in excess of the amount stated in the pretrial order. Finally, when plaintiff's counsel argued in closing that the jury should award the plaintiff $132,368 in back wages, Safelite did not object. The court finds that Safelite impliedly consented to the introduction of the issue of $132,368 for back wages. Therefore, Rule 15(b) applies to amend the pretrial order to conform to the evidence of back pay. Thus, this is not a sufficient basis on which to grant a new trial.

### C. Loss from the Sale of House

Safelite has moved for a new trial because the jury awarded $15,000 to the plaintiff for his loss on the sale of his home. Safelite argues, and the court agrees, that this award for breach of the implied contract is not supported by the evidence. For the reasons set forth below, the court grants a remittitur on the jury award of $15,000 and conditionally denies the motion for a new trial.

The plaintiff submitted evidence that when he left Wichita and moved to Arizona to accept new employment with Electrolux, he had to sell his house for a $15,000 loss from the original purchase price. The jury accepted this evidence and awarded him that amount as an element of damages for Safelite's breach of the implied contract. However, the plaintiff has failed to meet his burden of proof on any damages from the sale of his house which resulted from the breach of the implied employment contract.

■ Damages which are recoverable for breach of contract are limited to those which may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach. *Schatz Distributing Co., Inc. v. Olivetti Corp.,* 7 Kan.App.2d 676, 647 P.2d 820, 825–26 (1982).[4] When an

---

**4.** The choice of which state's law is applicable to the construction of a contract depends on where

employer breaches an employment contract by terminating an employee, that person's relocation expenses incurred in order to obtain comparable employment may reasonably be considered to have arisen, in the usual course of things, from the breach. However, "[o]ne who claims damages on account of a breach of contract must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach." *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 50, 519 P.2d 667 (1974).

 The plaintiff produced evidence that in order to move to Arizona and accept comparable employment with Electrolux his house was sold for a loss of $15,000 from the original purchase price. However, the plaintiff did not present evidence of what would have happened if Safelite had not breached the implied contract. Safelite presented evidence that its corporate headquarters moved from Wichita, Kansas to Columbus, Ohio after the plaintiff left the company. The plaintiff did not show whether or not he would have had to relocate with the corporate staff to Columbus if he had stayed with Safelite. Nor did he show, if he had been required to move to Columbus, whether Safelite would have purchased the house from him, at what cost, or whether he would have been forced to sell on the open market. Nor, significantly, was any evidence presented on the house's fair market value at the time of the sale or at any other time subsequent. The measure of damages for breach of contract is not the difference between the original price of the house and the price at which it was sold. It is, rather, the difference between the condition the plaintiff would have been in absent the breach and his condition after the breach, that is, the difference between the market price and the sale price. *See Schatz Distributing Co.,* 7

Kan.App.2d 676, 647 P.2d 820, 825–26. The plaintiff has simply presented no evidence from which a reasonable jury could determine whether or not, or to what extent, the plaintiff was damaged in connection with the house sale.

The court may grant a new trial when, as here, the size of the verdict is against the weight of the evidence. Wright and Miller, Federal Practice & Procedure: Civil § 2807 (1973). As discussed earlier, the court may condition the denial of a motion for a new trial on the plaintiff's acceptance of a remittitur. *Holmes v. Wack,* 464 F.2d 86 (10th Cir.1972). The court may grant a remittitur because the jury's verdict is "not the result of passion, prejudice or bias". *Mason v. Texaco, Inc.,* 948 F.2d 1546, 1560 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). Therefore, the court grants a remittitur to reduce the verdict by $15,000 subject to the plaintiff's approval. Should the plaintiff not accept the remittitur, the court grants the defendant Safelite a new trial only on the alleged damages from the house sale.

## IV. SUPPLEMENTAL DAMAGES

The plaintiff has moved for supplemental damages in the form of front pay, liquidated damages, and a restoration of stock option rights. That motion is granted, in part, as set out below.

### A. Front Pay

The plaintiff claimed a total of $308,704 in damages for front pay under the ADEA. This figure is the plaintiff's expert's estimate of the plaintiff's lost wages from the date of trial until he reaches age 70. The jury has already awarded the plaintiff $166,768 for lost future wages as a result of the breach of the implied employment contract. The plaintiff therefore seeks an additional $141,976.00 for front pay.[5] For the reasons set forth below, the court will

---

the contract is made. For choice of law purposes, a contract is 'made' where the last act necessary to complete the contract occurs. *State Farm Mut. Automobile Ins. Co. v. Baker,* 14 Kan.App.2d 641, 797 P.2d 168, 171 (1990). Here, Kansas law applies because all acts neces-

sary to complete the contract were made in Wichita, Kansas.

5. This amount represents the difference between the total the plaintiff is seeking for front pay under the ADEA and the amount already awarded by the jury for contract damages.

not grant any additional front pay beyond that which the jury has already awarded for future monetary damages for breach of the implied contract.

■ The plaintiff is entitled to an award for front pay. Both the plaintiff and Safelite have agreed that reinstatement, though the preferred remedy under the ADEA, is not an appropriate remedy here. The plaintiff contends that reinstatement is inappropriate because the corporation's management is hostile towards Courtney. *See EEOC v. Prudential Fed. Sav. & Loan Assn.*, 763 F.2d 1166, 1171–73 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Safelite does not regard reinstatement as a feasible remedy because the plaintiff has moved to a different state and started a new career; *see Eivins v. Adventist Health System*, 660 F.Supp. 1255, 1264 (D.Kan.1987); and his position has already been filled by someone else so there would be tremendous internal disruption if the plaintiff were reinstated. When reinstatement is not an appropriate remedy, the court has discretion to award the plaintiff front pay in lieu of reinstatement. *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1157 (10th Cir. 1990). The power to grant future damages is within the equitable powers granted by the ADEA to assure that "the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." *EEOC v. Prudential Fed. Sav. and Loan Ass'n*, 763 F.2d 1166, 1172–73 (10th Cir.1985).

■ The plaintiff argues that the award of front pay should assume that the plaintiff will work until age 70. The court will only grant front pay until age 65. The plaintiff testified that he intends to work until age 70. However, this court is not bound by the plaintiff's assertion of how long he intends to continue to work. The plaintiff's expert, Dr. Sturdevant, admitted on cross-examination that, based on statistical averages, it is more likely than not that the plaintiff will leave the workforce before age 65. Dr. Sturdevant also calculated two sets of future damages for the plaintiff, one based on working to 65 and one based on 70. The jury also concluded that the plaintiff would only work until age 65. Its award of $166,768 is based on Dr. Sturdevant's calculated future lost wages if the plaintiff only worked until age 65. Because the court believes that the plaintiff is likely to leave the workforce by age 65, the court will only award future lost wages based on the plaintiff working until age 65.

The plaintiff's expert calculated that the present value of the plaintiff's lost wages to age 65 is $166,768. The jury has already awarded this amount to the plaintiff for future monetary damages from the breach of the implied contract. To allow recovery for both amounts would give the plaintiff a double recovery. Therefore, no additional damages will be awarded to the plaintiff for front pay.

**B. Liquidated Damages**

■ The plaintiff seeks an award of liquidated damages under the ADEA. This award is proper. The jury found that defendant Safelite's conduct was willful in discriminating against Mr. Courtney. An award of liquidated damages is required once the jury has made a finding of "willfulness" in an ADEA claim. 29 U.S.C. § 216(b); 29 U.S.C. § 626(b); 29 U.S.C. § 623. Therefore, the court awards the plaintiff liquidated damages in an amount equal to and in addition to the jury's award of back pay. This amount, $122,544.70 is the amount the jury awarded for back pay, $132,368, less the court's remittitur of $9823.30.

**C. Stock Option Rights**

The plaintiff has moved the court to restore his stock option rights which were terminated when he left Safelite. The court finds that this is a proper remedy. The plaintiff had a stock option plan which allowed him to purchase up to 25,000 shares of Safelite stock at $10.00 per share. This will be restored to the plaintiff.

■ Under the ADEA, an award of future relief when reinstatement is not ap-

propriate "furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." *EEOC v. Prudential Fed. Sav. & Loan*, 763 F.2d 1166, 1172–73 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Prospective benefits lost as a result of an unlawful termination must be considered as an aspect of ADEA damages. *See Blim v. Western Electric Co., Inc.*, 731 F.2d 1473 (10th Cir.1984), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984). The court has the equitable power to restore the plaintiff's stock option rights because such an order would serve the statutory purpose of making the plaintiff whole. *See* 29 U.S.C. § 626(b); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975).

Safelite argues that the plaintiff was not injured by the loss of his stock option rights because the plaintiff has not shown that the price of the stock has exceeded the purchase option price at any time or that it is likely to do so. This argument lacks merit as to future relief under the ADEA. By the terms of the agreement, the option may be exercised any time before August 13, 1997. Should the stock price rise any time before that date, and the plaintiff lack his stock option rights, the plaintiff would have lost the ability to purchase the stock at a lower price. Therefore, restoring the plaintiff to his stock option rights would make him whole and prevent future injury to him.

Safelite also argues that the plaintiff's expert, Dr. Sturdevant has already included fringe benefits in his calculations of lost wages and front pay. Therefore, it argues, the plaintiff has already been compensated for fringe benefits. That argument does not find support in the facts. Dr. Sturdevant's report indicated that his calculations for lost fringe benefits only included losses for the pension plan. He made no mention of the stock option plan either in his report or in his testimony. Therefore, this argument lacks merit.

■ Finally, Safelite argues that the termination of the plaintiff's stock option rights is subject to the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, not the ADEA. However, this stock option plan is not subject to ERISA because it is only available to a selected number of employees, it is not connected with any pension plan, and the option may be exercised prior to the termination of employment. *See* Richard Neumeg, Annotation, *Employer's Plan to Grant Bonuses to Selected Employees as "Employee Welfare Plan," "Employee Pension Plan," or "Employee Benefit Plan" Within Meaning of 29 U.S.C. § 1102(1–3) Regarding Labor Law Provisions of Employment Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 et seq.)*, 55 ALR Fed. 390 (1981); 29 C.F.R. § 2510.3–2(c).

■ Even if the stock option plan were covered by ERISA, the terms of the plan allow the court to fashion this remedy. Safelite argues that, under ERISA, a benefit is subject to the written plan. 29 U.S.C. § 1102(a)(1). The stock option agreement states that an optionee who is terminated for any reason whatsoever must sell back to the company any stock purchased. Safelite argues that because Mr. Courtney was terminated, he no longer may participate in the stock option plan. However, the ADEA allows the court to order that a discriminatee be reinstated. 29 U.S.C. § 626(b). If Mr. Courtney were to be reinstated, he could continue to participate in the stock option plan. Safelite has informed the court that it considers Mr. Courtney's reinstatement inappropriate, in part because it has already filled his position. It would be inequitable to allow Safelite to block the restoration of Mr. Courtney's stock option rights because it opposes his reinstatement. Because the court has the power to grant Mr. Courtney's reinstatement and hence the continuation of his stock option rights, the court has the equitable power to order the restoration of Mr. Courtney's stock option rights without requiring that he be reinstated.

**1478**

*CONCLUSION*

IT IS, THEREFORE, ORDERED BY THE COURT that defendant Robert Morosky's motion for judgment on the special verdict (Doc. # 211) is granted.

IT IS FURTHER ORDERED that plaintiff Robert Courtney take nothing of defendant Robert Morosky and that action is dismissed on the merits.

IT IS FURTHER ORDERED that judgment is entered in favor of plaintiff Robert Courtney on his claims against defendant Safelite Glass Corporation for age discrimination in violation of the ADEA and KADEA and on his claim for breach of the implied contract pursuant to the jury's special verdict.

IT IS FURTHER ORDERED that plaintiff Robert Courtney recover of defendant Safelite Glass Corporation the sum of Five Hundred and Ten Thousand, Eight Hundred and Fifty–Four Dollars and Forty Cents ($510,854.40), with interest thereon at the rate of 3.76% as provided by law, and his costs of this action. This total award consists of the following components: $122,544.70 lost wages to date of trial[6]; $2,000 pain, suffering and humiliation (KADEA); $122,544.70 liquidated damages; $166,768 future lost wages and $96,-997 future pension damages.

IT IS FURTHER ORDERED that plaintiff Robert Courtney recover of defendant Safelite Glass Corporation attorney's fees for this action, the amount to be determined in accordance with District of Kansas Rule 220.

IT IS FURTHER ORDERED that should plaintiff Robert Courtney choose not to accept the court's remittitur of $15,000 from the jury's award for damages, the court orders a new trial on the issue of alleged damages on the sale of his house under his claim for breach of implied contract. Plaintiff will be deemed to have accepted the remittitur unless he notifies the court in writing to the contrary within thirty days of the date hereof or unless he

files a timely appeal of this order challenging the remittitur.

IT IS FURTHER ORDERED that should plaintiff Robert Courtney choose not to accept the court's remittitur of $9823.30 from the jury's award for back pay, the court orders a new trial on the issue of back pay damages under the ADEA and KADEA. Plaintiff will be deemed to have accepted the remittitur unless he notifies the court in writing to the contrary within thirty days of the date hereof or unless he files a timely appeal of this order challenging the remittitur.

IT IS FURTHER ORDERED that plaintiff Robert Courtney be restored by defendant Safelite Glass Corporation to the right to purchase 25,000 shares of Safelite Glass Corporation stock as set out in the Stock Option Agreement (Defendant's Exhibit 403) as if he had not been terminated by Safelite. These stock option rights shall be adjusted in all respects to reflect the reverse stock split of July 10, 1989.

---

**6.** This amount is the jury's award for back pay of $132,368 less the court's remittitur of $9823.30.